# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-14-00071-CV

Austin Independent School District, Appellant

v.

Andrew Lofters, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-09-003078, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Andrew Lofters sued his former employer, the Austin Independent School District (AISD), alleging race discrimination and retaliation in violation of the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code §§ 21.051, .055. AISD filed a plea to the jurisdiction, asserting in relevant part that the trial court lacked subject-matter jurisdiction over Lofters's claims because he failed to exhaust his administrative remedies by timely filing a charge of discrimination or retaliation. The trial court denied the plea, and AISD filed this appeal. In four issues, AISD argues that the trial court erred in denying its plea to the jurisdiction because (1) the jurisdictional evidence conclusively established that Lofters failed to comply with a jurisdictional prerequisite to suit and (2) Lofters could not establish a prima facie case of race discrimination or retaliation and, as a consequence, could not demonstrate that AISD had waived its governmental immunity. We will reverse the trial court's order denying the plea and render judgment dismissing the case for lack of jurisdiction.

## BACKGROUND

In 2004, Lofters was hired by AISD as one of four assistant principals at Austin High School. In the fall of 2006, Lofters applied for admission to a doctoral degree program in Community College Leadership offered by the University of Texas's College of Education. Lofters was admitted to the program and began attending classes in the summer of 2007. According to his petition, Lofters was told in March 2007, before he began attending classes, that he would be able to change his work schedule to accommodate his class schedule. Lofters alleged that in August 2007, the Austin High School principal informed him that he would not agree to an altered work schedule after all, and required Lofters to choose between the doctoral degree program or his assistant principal position at Austin High. Lofters chose to attend the program and, on September 5, 2007, resigned from his assistant principal job and accepted a part-time position as a teacher at Johnston High School's Twilight School Program, working from 4:30-8:30 p.m.

Lofters alleged that in January 2008, he learned that there were other AISD employees who had been permitted to attend programs similar to the doctoral degree program Lofters was attending and continue working at their schools. According to Lofters, these other non-African-American employees were allowed to rearrange their work schedules so that they could attend classes while maintaining their administrative positions.

On June 4, 2008, the Texas Commissioner of Education announced that Johnston High School would be closed due to the campus's failure, over several years, to meet Texas Education Agency standards. The next day, Lofters sent a letter to AISD's Executive Director of Human Resources informing her that he believed he was discriminated against when he was denied

2

"leave and flexibility of employment to attend a doctoral degree program at the University of Texas."

On June 11, 2008, all of the Twilight School Program teachers, including Lofters, were notified that their positions had been eliminated, effective June 5, due to the closure of Johnston High School. According to Lofters's petition, the other teachers whose positions were eliminated were given "a better opportunity and different alternatives to facilitate their continued employment with the district" while he was given "no assistance and was not encouraged to seek another position."

Lofters filed a charge of race discrimination with the EEOC and the Texas Workforce Commission Civil Rights Division on July 25, 2008. His charge stated:

> On January 28, 2008, I discovered that White administrative employees were permitted by the superintendent to attend PhD classes at the University of Texas during the work day, without any adjustment to their jobs, pay or work schedule. When I had originally requested the same sort of arrangement, in August of 2007, I was advised that the superintendent does not allow administrative employees (which I was) to attend PhD classes during the school day. I was required to leave my position as an Assistant Principal at Austin High School and teach half time so I could attend the doctoral program as a result I lost about $3,000.00 per a [sic] month in wages.

Lofters amended his charge on December 26, 2008, to assert a claim of retaliation, stating that:

> On or about June 5, 2008, I was discharged from my position as a Teacher. I believe that this action occurred in retaliation for my original complaints to the employer of Employment Discrimination based on my Race (Black) when I was denied permission to attend PhD classes at the University of Texas during the work day, when other administrative employees who were White were permitted to attend.

After the EEOC indicated that it intended to dismiss the charge of discrimination, Lofters's attorney requested a right to sue letter and the underlying litigation was initiated.

3

Lofters sued AISD alleging discrimination and retaliation in violation of the TCHRA. *See id.* AISD filed a plea to the jurisdiction asserting that the court lacked subject-matter jurisdiction over the claims because Lofters failed to comply with the jurisdictional prerequisite of timely filing an administrative complaint, as required by statute. *See id.* § 21.202(a). Both Lofters and AISD submitted evidence relating to the timeliness of filing the charge of discrimination. After a hearing, the trial court denied the plea to the jurisdiction and this appeal followed.

**STANDARD OF REVIEW**

Whether a court has subject-matter jurisdiction is a question of law. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In deciding a plea to the jurisdiction, we may not weigh the merits of the plaintiff's claims, but must consider only the plaintiff's pleadings, construed in the plaintiff's favor, as well as evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). If a plea to the jurisdiction challenges the existence of jurisdictional facts, the court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *See Miranda*, 133 S.W.3d at 227. The jurisdictional issue in the present case concerns the timing and content of Lofters's communications with the EEOC. Thus, the jurisdictional evidence does not implicate the merits of the case and the relevant jurisdictional facts were undisputed. When the jurisdictional facts do not implicate the merits and are undisputed, the court makes the jurisdictional determination as a matter of law based solely on those undisputed facts. *Id.* at 228. We review that determination de novo. *Id.*

**DISCUSSION**

To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the TCHR "not later than the 180th day after the date the alleged unlawful employment practice occurred." *See* Tex. Lab. Code § 21.202(a). The 180-day period begins to run "when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). Timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 503 (Tex. 2012); *Specialty Retailers*, 933 S.W.2d at 492. Failure to exhaust the TCHRA's administrative remedies is a jurisdictional defect. *See City of Waco v. Lopez*, 259 S.W.3d 147, 149 (Tex. 2008).

*Race Discrimination Claim*

The adverse employment decision that is the basis of Lofters's race discrimination claim is AISD's refusal to permit him to have a work schedule that would permit him to attend the doctoral degree classes during the day. Lofters was informed of AISD's decision in this regard on August 27, 2007. Lofters resigned from his position as assistant principal at Austin High School on September 5. Thus, even using the later of the two dates, in order for Lofters's charge of discrimination to be filed timely, it must have been filed on or before March 3, 2008. It is undisputed that the charge was not filed by that date.[1]

---

[1] Lofters contends that filing was accomplished on July 15, 2008, when he sent a letter to the EEOC. AISD contends that filing was not accomplished until July 25, 2008, when Lofters filed

5

Lofters does not dispute that he learned on August 27 that AISD had denied his request for a schedule that would accommodate the doctoral degree program or that the denial was the reason for his resignation on September 5. In employment discrimination cases brought under chapter 21, the 180-day period begins to run "when the employee is informed of the allegedly discriminatory employment decision." *Specialty Retailers*, 933 S.W.2d at 493 (citing *Ricks*, 449 U.S. at 258). "[T]he date of the discriminatory act controls, not some later date when the employee discovers the act is discriminatory." *See Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *3 (Tex. App.—Texarkana Dec. 10, 2008, pet. denied) (mem. op.) (citing *Merrill v. Southern Methodist Univ.*, 806 F.3d 600, 605 (5th Cir. 1986)); *see also Ogletree v. Glen Rose Indep. Sch. Dist.*, 314 S.W.3d 450, 455 (Tex. App.—Waco 2010, pet. denied) (noting that limitations period for section 1983 gender discrimination case began to run when plaintiff was terminated, not when she learned that male teacher was treated differently); *Acosta v. Mem'l Hermann Hosp. Sys.*, No. 14-07-00001-CV, 2008 WL 190052, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, pet. denied) (mem. op.) (noting that, under Title VII, claimant's knowledge of discriminatory act, not knowledge that act had discriminatory motive, triggers limitations period and applying that reasoning to limitations period for health care liability claim premised in part on discriminatory denial of epidural anesthesia). This is consistent with federal courts' construction of the limitations period for Title VII discrimination claims. *See, e.g.*, *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992) (holding that Title VII requires that notice of claim be filed within thirty days of discriminatory act, not claimant's knowledge that

his actual charge of complaint. This dispute is not relevant to the jurisdictional inquiry because either date is well beyond the 180-day deadline for filing an administrative complaint.

act had discriminatory motive). Thus, because Lofters knew of the allegedly discriminatory act on August 27, the 180-day filing period began to run that day, not on January 28, 2008, the date he came to believe that AISD's decision derived from a discriminatory motive.

Despite this precedent, Lofters argues that the "discovery rule" should apply to this case, by which we understand him to mean that the limitations period for his claim of race discrimination should not have begun to run until he "discovered" the allegedly discriminatory motive for refusing his request for flexible scheduling. In Lofters's view the "unlawful employment practice" that triggers the 180-day filing period is not the adverse employment decision alone, but that decision coupled with his knowledge that it was made with discriminatory intent. Even if Lofters is correct, an issue we need not decide, we would decline to apply the "discovery rule" to his claim.

The discovery rule applies to certain categories of cases in which a plaintiff does not immediately realize that he has suffered an injury as a result of the defendant's conduct. When the discovery rule applies, the cause of action is deemed not to accrue, and consequently the limitations period is deemed not to have commenced, until the plaintiff "knows or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). The supreme court has explained that application of the discovery rule is justified in cases in which the injury is both "inherently undiscoverable" and "objectively verifiable." *See id.* at 6. Thus, the discovery rule defers accrual of a cause of action in cases in which "the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *Id.* An injury is inherently undiscoverable if "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Computer Assocs. Int'l*

7

*v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The requirement that the injury be "objectively verifiable" ensures that "the bar of limitations cannot be lowered for no other reason than a swearing match between parties over facts and between experts over opinions." *S.V.*, 933 S.W.2d at 15. The two elements of inherent undiscoverability and objective verifiability "balance the conflicting policies in statutes of limitations: the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period." *Id.* at 6.

In this case the alleged employment discrimination was neither "inherently undiscoverable" nor "objectively verifiable" such that we could conclude that the discovery rule applies. There is nothing in the record to suggest that, in the exercise of reasonable diligence, Lofters could not have discovered the facts forming the basis for his belief that AISD's decision was made with a discriminatory motive. *See Texas Dep't of Protecive & Regulatory Servs. v. Lynn*, No. 03-04-00635-CV, 2005 WL 1991809, at *7 n.16 (Tex. App.—Austin Aug. 16, 2005, pet. denied) (mem. op.) (plaintiff's statement that she did not discover race-based motive until one year after termination "falls short of demonstrating that the nature of [her] injury, racial discrimination, was such that it was inherently undiscoverable during the limitations period despite her due diligence"). More importantly, though, the record does not show that the alleged race discrimination in this case is objectively verifiable. *Compare Gaddis v. Smith*, 417 S.W.2d 577, (Tex. 1967) (presence of sponge in plaintiff's body and explanation for how it got there were not in dispute and facts upon which liability was asserted were demonstrated by direct, physical evidence) *with Robinson v. Weaver*, 550 S.W.2d 18 (Tex. 1977) (declining to apply discovery rule where liability had to be established by expert testimony that could not supply objective verification of wrong and injury necessary for

8

rule's application). Lofters has not identified any evidence capable of objectively verifying that AISD denied his request for a schedule change because of his race. The discovery rule thus would have no application to this case.

Lofters also argues that equitable tolling should apply to extend the 180-day filing period because "he did not know that the injury was caused by a discriminatory action until he learned that other people were given permission when he was not." The equitable tolling doctrine permits a plaintiff to avoid the bar of the statute of limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim. *See In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010). Texas courts have consistently declined to apply equitable tolling concepts to jurisdictional filing periods. *See Goss v. City of Houston*, 391 S.W.3d 168, 174 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("[W]e hold that the equitable tolling doctrine does not apply to claims brought against governmental entities under the TCHRA."); *Czerwinski v. University of Tex. Health Sci. Ctr.*, 116 S.W.3d 119, 123 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("We hold the doctrine of equitable estoppel is not applicable because the statutory filing requirements are jurisdictional."); *Guevara v. H.E. Butt Grocery Store*, 82 S.W.3d 550, 552 (Tex. App.—San Antonio 2002, pet. denied) (refusing to apply doctrine of equitable tolling to 180-day filing period in age discrimination suit because timely filing of complaint under TCHRA is "mandatory and jurisdictional"); *see also In re United Servs. Auto Ass'n*, 307 S.W.3d at 311 (noting that equitable tolling is court-created doctrine that "may not apply if a statutory requirement is deemed jurisdictional"); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (observing that neither equitable estoppel nor equitable tolling applies to jurisdictional statutes

9

of limitations). Lofters's reliance on *Davis v. Autonation USA Corp.*, 226 S.W.3d 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied), and *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30 (Tex. App.—Austin 1998, pet. denied), as authority for his position that equitable tolling should apply here is misplaced. Both *Davis* and *Wal-Mart Stores* were concerned with identifying the circumstances in which the "continuing violation" doctrine could apply to effectively defer the accrual date of an employment discrimination claim when an unlawful employment discrimination practice manifests itself over time rather than as a series of discrete acts.

Moreover, even were we to conclude that the equitable tolling doctrine could apply to a jurisdictional filing requirement, such application would not save Lofters's claim. Lofters asserts that he learned facts leading him to believe that AISD's decision was discriminatory on January 28, 2008. This was 35 days before the expiration of the 180-day filing period on March 3.[2] Despite having plenty of time after January 28 to timely file his charge of discrimination, Lofters waited 179 days to do so and offers no explanation or excuse for the delay. We agree with the following observation made by a federal court addressing a situation similar to this one:

> We do not think equitable tolling should bring about an automatic extension of the statute of limitations by the length of the tolling period or any other definite term. It is, after all, an equitable doctrine. It gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations. Statutes of limitations are not arbitrary obstacles to the vindication of just claims, and therefore they should not be given grudging application.

---

[2] Again, the March 3, 2008 deadline assumes the 180-day filing period began to run when Lofters resigned from his job as an assistant principal at Austin High School.

*Cada*, 920 F.2d at 452-53. Even were we to agree that Lofters, despite the exercise of due diligence, was unable to obtain information necessary to alert him of AISD's discriminatory conduct until January 28, he had the necessary information before the 180-day filing period expired, could have filed a charge of discrimination (a one-page form) within that period of time or, in any event, sooner than the 179 days he waited to file it, and should have done so. Because Lofters failed to file his charge within a reasonable time, equitable tolling, even if it applied to this case, would not extend the filing period the additional 179 days required to make Lofters's charge of discrimination timely filed.

. We hold that Lofters's charge of race discrimination was not filed within the 180-day period required by section 21.202(a). The trial court did not have jurisdiction over this claim and erred by denying AISD's plea to the jurisdiction. We sustain AISD's first appellate issue.[3]

### Retaliation

The original charge of discrimination Lofters filed on July 25, 2008, did not allege retaliation but complained solely of race discrimination. On December 26, Lofters amended his charge to include the following allegation:

> On or about June 5, 2008, I was discharged from my position as a Teacher. I believe that this action occurred in retaliation for my original complaints to the employer of Employment Discrimination based on my Race (Black) when I was denied permission to attend PhD classes at the University of Texas during the work day, when other administrative employees who were White were permitted to attend.[4]

---

[3] Having sustained this issue we need not address AISD's third issue in which it asserts that Lofters did not establish a prima facie case of race discrimination.

[4] Lofters learned of the decision to discharge him, along with the other Twilight School Program teachers, on June 11, 2008.

11

Retaliation is a different legal theory from race-based discrimination. *Davis v. Education Serv. Ctr.*, 62 S.W.3d 890, 894 (Tex. App.—Texarkana 2001, no pet.). "Generally, amendments that raise a new legal theory do not 'relate back' to an original charge." *University of Tex. v. Poindexter*, 306 S.W.3d 798, 809 (Tex. App.—Austin 2009, no pet.) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 878 (5th Cir. 2003)).[5] Lofters's retaliation charge does not relate back to his July 25, 2008 charge of discrimination and was filed at least 18 days after the expiration of the 180-day filing period for that claim. *See* Tex. Lab. Code § 21.202(a).

Lofters attempts to save his retaliation claim by contending in the district court and in this Court that the retaliatory conduct was not his discharge from Johnston High School (which he concedes resulted from the TEA's decision to close the campus) but AISD's subsequent failure to assist him in finding other employment within the district as he alleged it did with other, presumably non-African-American, employees. Even if this were properly characterized as an actionable adverse employment action, we hold that Lofters did not exhaust his administrative remedies for such a claim because it cannot fairly be read to be included in the charge he filed on December 26.[6]

---

[5] In *Poindexter* this Court noted that an exception to this rule exists when an employer retaliates against an employee "for the very act of filing an employment discrimination claim." *University of Tex. v. Poindexter*, 306 S.W.3d 798, 809 n.9 (Tex. App.—Austin 2009, no pet.). Lofters had not filed his charge of race discrimination at the time he was discharged as a teacher at Johnston High School. Consequently, this exception does not apply.

[6] Evidence that other similarly situated employees were given assistance in finding new positions within AISD, standing alone, would not support a claim of retaliation under the TCHRA. A prima facie retaliation case requires proof that an employee suffered an "adverse employment action" as a result of engaging in protected activity. *See Ptomey v. Texas Tech. Univ.*, 277 S.W.3d 487, 489 (Tex. App.—Amarillo 2009, pet. denied). An "adverse employment action" means "an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating." *See id.* at 492 (quoting *Foley v. University of Houston Sys.*, 355 F.3d 333, 340 (5th Cir. 2003)).

We construe a charge of discrimination liberally, and "look slightly beyond its four corners, to its substance rather than its label." *County of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at \*4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006)). The charge must "contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges." *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied). Lofters's charge, which specifically refers to his discharge from employment as the allegedly retaliatory act, would not put AISD on notice that he was complaining that AISD retaliated against him by failing to assist him in finding another job within the school district.

Lofters contends that we should look not only to the charge, but also to a letter his counsel sent to the EEOC on November 21, 2008, stating that Lofters wanted to amend his charge to include allegations of retaliation. The letter states:

> After reviewing my records, I have found that [AISD] released me from my teaching position soon after I informed them that I felt they had discriminated against me. The human resource office's justification for releasing me from the teaching position was that the position was temporary. After reviewing the human resource posting description of the teaching position, I have found that the position was never, at any time, described as temporary.

Even were we to consider this letter as part of the charge of discrimination, an issue we need not decide, it does not serve to exhaust administrative remedies for a claim that AISD retaliated against Lofters by failing to provide assistance in finding another job. Again, the complaint is directed at his discharge, not any subsequent events. This letter did not put AISD on notice of the nature of the charge he now seeks to pursue. *See Manion*, 2012 WL 1839399, at \*4.

13

We conclude that Lofters failed to exhaust his administrative remedies as required to assert his retaliation claim. We sustain AISD's second appellate issue.[7]

## CONCLUSION

Because Lofters failed to exhaust his administrative remedies as to his claims of race discrimination and retaliation, the trial court lacked subject-matter jurisdiction over these claims. We reverse the trial court's order denying AISD's plea to the jurisdiction and render judgment dismissing Lofters's claims for lack of jurisdiction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Reversed and Rendered

Filed: April 1, 2015

---

[7] Having sustained this issue we need not address AISD's fourth issue in which it asserts that Lofters did not establish a prima facie case of retaliation.