ACCEPTED
14-15-00152-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
8/11/2015 1:54:59 AM
CHRISTOPHER PRINE
CLERK

No. 14-15-00152-CV

_____

IN THE FOURTEENTH COURT OF APPEALS,
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
8/11/2015 1:54:59 AM
CHRISTOPHER A. PRINE
Clerk

_____

HARRIS COUNTY HOSPITAL DISTRICT,

*Appellant,*

V.

WILLIAM PARKER,

*Appellee.*

_____

On Appeal from Cause No. 2012-65681,
In the 164th District Court of Harris County, Texas

_____

BRIEF OF APPELLEE

_____

Craig R. Keener
Craig R. Keener, P.C.
State Bar No. 11167875
1005 Heights Boulevard
Houston, Texas 77008
CRKeener@aol.com
713.529.0048 Telephone
713.529.2498 Facsimile

ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT & AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.      Standards - Plea to the Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.    HCHD Waived the Right to Complain About the Court's Denial of
        It's Plea to the Jurisdiction Regarding Plaintiff's Gender Claims. . . . . . . . 19

IV.     Direct Evidence of Discrimination Gives the Court Subject-Matter
        Jurisdiction Over Plaintiff's Disparate-Treatment and
        Hostile-Work-Environment Race Discrimination Claims. . . . . . . . . . . . . 19

V.      Plaintiff Made a *Prima Facie* Case of Disparate-Treatment and
        Hostile-Work-Environment Race Discrimination. . . . . . . . . . . . . . . . . . . 22

VI.     Plaintiff Made a Prima Facie Case of Retaliation. . . . . . . . . . . . . . . . . . . 29

CONCLUSION & PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

## Cases

*Barto Watson, Inc. v. City of Houston*, 998 S.W.2d 637
(Tex. App.-Houston [I" Dist.] 1999, pet. denied). . . . . . . . . . . . . . . . . . 16, 17

*Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317
(Tex. App.–Texarkana 2008, pet denied). . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Baylor Univ. v. Coley*, 221 S.W.3d 599 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . 24

*Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547 (Tex.2000). . . . . . . . . . . 16, 18, 19

*Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993). . . . . . . . . . . . 20

*Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir.1993). . . . . . . 20, 21

*Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006). . . . . . . . 32

*Cain v. Blackwell*, 246 F.3d 758, (5th Cir 2001). . . . . . . . . . . . . . . . . . . . . . . . . 31

*Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559 (1st Cir. 1986). . . . . . . . . . . . . 25

*Carlson v. City of Houston* , 309 S.W.3d 579
(Tex.App.-Houston [141h Dist.] 2010, no pet.). . . . . . . . . . . . . . . . . . . . . 17

*City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739
(Tex.App.- Houston [1st Dist.] 2009, pet. denied). . . . . . . . . . . . . . . . . 18-19

*City of Houston v. Kiju Joh*, 359 S.W.3d 895
(Tex. App.-Houston [14th Dist.] 2012, no pet.). . . . . . . . . . . . . . . . . . . . 16

*City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008). . . . . . . . . . . . . . . . 31, 36

*Collins v. Baptist Mem. Geriatric Ctr.*, 937 F.2d 190 (5th Cir. 1991). . . . . . . . . . 30

*Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009). . . . . . . . . . . . . . . . 31

*Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir. 1995). . . . . . . . . . . . . . . . 22

*Donaldson v. CDB Inc.*, No. 08-60666, 2009 WL 1916466, 1
       (5th Cir. July 6, 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Dowe v. Total Action Against Poverty*, 145 F.3d 653 (4th Cir. 1998). . . . . . . . . . 33

*Elgaghil v. Tarrant County Junior College*, 45 S.W.3d 133
       (Tex. App–Fort Worth 2000, pet. denied). . . . . . . . . . . . . . . . . . . . . . . 36

*Eugene v. Rumsfeld*, 168 F.Supp.2d 655 (S.D. Tex. 2001). . . . . . . . . . . . . . . .32-33

*Fields v. Teamsters Local Union 988*, 23 S.W.3d 517
       (Tex. App. – Houston [1[st] Dist.] 2000, pet. denied). . . . . . . . . . . . . . . . 33

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). . . . . . . . . . 23, 24

*Frank v. Xerox Corp.*, 347 F.3d 130 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 27

*Freeman v. Harris County*, 183 S.W.3d 885
       (Tex.App.-Houston [151 Dist.] 2006, pet. denied).. . . . . . . . . . . . . . . . . 16

*Godley I.S.D. v. Woods*, 21 S.W.3d 656
       (Tex.App.-Waco 2000, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gotch v. Gotch*, 416 S.W.3d 633,
       (Tex. App.–Houston [14[th] Dist.] 2013, no. pet.).. . . . . . . . . . . . . . . . . . 19

*Herbert v. City of Forest Hill*, 189 S.W.3d 369
       (Tex. App.-Fort Worth 2006, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Knatt v. Hospital Service Dist. No. 1 of East Baton Rouge Parish*,
       327 Fed. Appx. 472 (5th Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992). . . . . . . . . . . . . 24

*LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444 (5th Cir. 1996). . . . . . . . . . . . . . . 23

*Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . 30

*Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir 1997). . . . . . . . . . . . . . . 30

*Mayhew v. Town of Sunnyvale*, 964 S. W .2d 922 (Tex.1998). . . . . . . . . . . . . . . 17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792,
    36 S.Ct. 668, 93 L.Ed.2d 1817 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23

*Mission Consolidated Independent School District v. Garcia*,
    372 S.W.3d 629 (Tex. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

*NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, (Tex.1996). . . . . . . . . . . . . . . . 22

*Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 329 (5th Cir. 1994). . . . 20

*Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487,
    (Tex. App. – Amarillo 2009, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, (Tex.2001). . . . . . . . . . . . . 22

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133,
    120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996). . . . . . . . . . . . 23

*Romo v. Texas Dept. Of Transportation*, 48 S.W.3d 265
    (Tex. App. – San Antonio 2001, ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). . . . . . . 35-36

*Santi v. Univ. of Tex. Health Science Center at Houston*, 312 S.W.3d 800
    (Tex. App.–Houston [1st Dist.] 2009, no pet). . . . . . . . . . . . . . . . . . . . . 35, 36

*Solis v. San Antonio Indep. School District*, 2010 WL 4929111
    (W.D. Tex. Nov. 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Texas Ass'n of Bus. v. Texas Air Control Bd.*,
    852 S.W.2d 440 (Tex.1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Texas Dept. of Parks and Wildlife v. Miranda*,
    133 S.W.3d 217 (Tex. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734
    (Tex. App–Houston [14th Dist.] 1999, no pet.). . . . . . . . . . . . . . . . . 36, 37

*Thornbrough v. Columbus and Greenville R. Co.*,
    760 F.2d 633 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1984). . . . . . . . . . . . . . . 20

*Vadie v. Mississippi State Univ.*, 218 F.3d 365 (5th Cir. 2000). . . . . . . . . . . . . . 30

*Vice v. Kasprzak*, 318 S.W.3d 1
    (Tex. App.–Houston [1ˢᵗ Dist.] 2009, pet denied). . . . . . . . . . . . . . . . . 21

*Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*,
    139 F.3d 532 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Yselta Independent School District v. Monarrez*, 177 S.W.3d 915 (Tex. 2005). . . 25

## Rules and Statutes

TEX. LAB. CODE ANN. § 21.001(1) (Vernon 2012). . . . . . . . . . . . . . . . . . . . . . . . 22

TEX. LAB. CODE ANN. § 21.051 (Vernon 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 22

TEX. LAB. CODE ANN. § 21.055 (Vernon 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 29

TEX. LAB. CODE ANN. § 21.051-.556 (Vernon 2012). . . . . . . . . . . . . . . . . . . . . . 22

TITLE VII OF THE CIVIL RIGHTS ACT OF 1964. . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATEMENT OF THE CASE

*Nature of Case:*  This is an employment discrimination and retaliation case. William Parker pled six distinct causes of action against Harris County Hospital District ("HCHD"): 1) Disparate treatment by his manager Kim Le because of his race; 2) Disparate treatment by his manager Kim Le because of his gender; 3) Hostile work environment created by his manager Kim Le because of his race; 4) Hostile work environment created by his manager Kim Le because of his gender; 5) Retaliation by Kim Le for William Parker reporting her discriminatory conduct to Therese Hoffman on November 29, 2011; and 6) Retaliation by HCHD for firing him for pretextual reasons eighteen days after he filed a charge of discrimination.  (CR 4-6).

*Parties*:  HCHD and William Parker.

*Proceedings*:  HCHD filed a Plea to the Jurisdiction, or alternatively, a traditional and no-evidence Motion for Summary Judgment. (CR 11-837).  Plaintiff responded.  (CR 838-1034).  HCHD replied. (CR 1037-1050).  HCHD also lodged numerous objections to Plaintiff's evidence.  (CR 1051-1061).  A hearing was held on November 21, 2014 to consider HCHD's Motions and Objections.

*Disposition*:  HCHD failed to get a ruling on its objections to evidence. Contrary to HCHD's contention that part of its plea to the jurisdiction was granted, the Court heard and denied HCHD's entire plea to the jurisdiction.  The Court granted an interlocutory summary judgment on William Parker's gender claims.  (CR 1062, 1064).

*Notice of Appeal*:  On December 11, 2014, HCHD filed a Notice of Appeal and this appeal ensued. (CR 1065-1066).

*Record on Appeal*:The record on appeal consists of 2 volumes of the clerk's record ("CR _").

## ISSUES PRESENTED

Issue No. 1: Did HCHD waive its right to complain about the Court's denial of its plea to the jurisdiction regarding Plaintiff's gender claims.

Issue No. 2: Does the direct evidence of discrimination give the Court subject-matter jurisdiction over Plaintiff's disparate-treatment and hostile-work-environment race discrimination claims.

Issue No. 3: Did Plaintiff make a *prima facie* case for the Court to have subject-matter jurisdiction over Plaintiff's disparate-treatment and hostile-work-environment race discrimination claims.

Issue No. 4: Did Plaintiff make a *prima facie* case for the Court to have subject-matter jurisdiction over Plaintiff's retaliation claims.

William Parker objects to HCHD's statement of facts. TEX. R. APP. P. 38.1(g); 38.2(a)(B). HCHD's statement of facts includes argument, invites the Court to address the merits, and ignores the applicable standard of review. William Parker provides the following statement of facts consistent with the applicable standard of review.

William Parker is an African-American male. Kim Le is an Asian Female and was William Parker's boss. Therese Hoffman is a White female and is Kim Le's boss. Anne Fonge is a female from Cameroon, who also reports to Kim Le, and was similarly situated to William Parker. Mae McEuen is an Asian female who also reports to Kim Le, and was similarly situated to William Parker. Any fact not given a specific deposition cite is supported by the affidavit of William Parker. (CR 868-872). To show the Court that denial of the plea to the jurisdiction was proper, relevant facts are put into a time-line chronology:

| DATE | EVENT |
|------|-------|
| 2006 | William Parker begins working for HCHD. |
| 2010 | William Parker's performance evaluations for 2006-2010 are 300, 321, 355, 350, and 303 all of which are commendable. (CR 595-680). Kim Le becomes his supervisor in 2010. |

6/10/2011    In 2011, patient satisfaction has improved at Settegast. (CR 972, Hoffman 29/21). There is a six point jump in patient satisfaction scores. (CR 974, Hoffman 38/18). William Parker's 2011 performance review from Kim Le is lower than before and is unfair. He is given a 290, which is below commendable for the first time in his career. (CR 658).

11/29/11    William Parker meets with Therese Hoffman, Ambulatory Pharmacy Director, and expresses to her that he believes that he is being treated differently than his counterparts. William Parker tells Therese Hoffman that he is being treated differently than Kim Le's other supervisors. (CR 982, Hoffman 71/6). William Parker gives her many examples of how Kim Le is treating him differently than his counterparts, and tells Dr. Hoffman that he thinks he is being discriminated against due to his race and gender. (CR 869, ¶ 3, CR 896, Parker 68/8, CR 900, Parker 81/6). William Parker also gives Therese Hoffman a written document that encapsulates being discriminated against because of his race and gender. (CR 904, Parker 99/19). This is the first

time Therese Hoffman hears William Parker is being micro-managed and called 20 times a day. (CR 973, Hoffman 33/17).

12/12/11    Therese Hoffman has a meeting with William Parker and Kim Le to talk about William Parker's issues with Kim Le. (CR 974, Hoffman 40/1).

12/13/11-8/23/12    From the time he meets with Kim Lee until he goes on FMLA leave because his job is making him sick, William Parker is retaliated against by Kim Le. Anne Fonge relays to William Parker that Kim Le states to Anne Fonge, when talking about William Parker, that black males don't work. William Parker is just here to sit on the clock. (CR 895, Parker 61/13). He is scrutinized, micro-managed and constantly criticized to the point where it creates a hostile work environment. William Parker receives more than 10 calls about the same subject matter several days a week. Kim Le speaks with William Parker in a hostile, demeaning tone. (CR 901, Parker 86/15, CR 901, 87/3). Kim Lee yells at William Parker. (CR 901, Parker 87/22). She demeans him in front of staff. (CR 901, Parker 88/15). She also emails William Parker, stating things such as "there is paper on

-3-

the floor, the pharmacy is dirty, and drugs are not being flagged that are expiring within one year. The wholesaler is sending the pharmacy short-dated drugs on a daily basis, and this is known by Kim Le. (CR 900, Parker 81/12). She complains about these drugs being on the pharmacy shelf, when she knows they are supplied that way. (CR 905, Parker 102/3). She also instructs William Parker to write up employees for clocking in after the scheduled time but before the allotted grace period. These types of write-ups do not have validity. William Parker is later told by human resources that these write-ups are improper. This is done to humiliate William Parker and his staff and to keep him busy with human resource issues instead of daily pharmacy operations. This is Kim Le's way of showing Therese Hoffman that Kim Le has complaints about William Parker. William Parker is wrongfully accused by Kim Le of writing an anonymous letter about pharmacy errors. William Parker e-mails Therese Hoffman about this retaliation, but is ignored.

William Parker is treated very differently than his female counterparts. Kim Le and William Parker don't get along well.

William Parker does not enjoy working with Kim Le. Kim Le does say disparaging and derogatory things about William Parker. When asked if he ever showed up before his shift started, Kim Le testified in her deposition "Probably not." (CR 445, Le 82/9). Kim Le is not fully supportive of William Parker. Kim Le does things to hurt William Parker's career at HCHD. William Parker has numerous complaints and is not happy about how Kim Le manages him. Kim Le never goes a day without calling William Parker. Kim Le calls William Parker over ten times on most days, and often just repeats herself. Kim Le does nitpick and micro-manage William Parker's pharmacy. Kim Le calls William Parker several times a day to discuss attendance. Kim Le is hands-on with William Parker's pharmacy's clocking-in or clocking-out procedures. Kim Le does tell William Parker to write up employees who are not tardy per HCHD policy. Kim Le tries to have an intern watch what William Parker is doing. Kim Le does numerous things to humiliate William Parker and make him look bad to Dr. Hoffman and others. William Parker is told negative things about the number of help-desk tickets that are generated

when new software is brought out.  Wait times are an issue, and William Parker is spoken to by Kim Le about wait times that are not his fault.  William Parker is not allowed to work at Kirby, where Kim offices, after meetings there.  William Parker is not taken to lunch by Kim Le.

Anne Fonge is treated much better than William Parker.  Anne Fonge is the Pharmacy Supervisor for the Strawberry Pharmacy.  (CR 988, Fonge 6/17).  She and William Parker have the exact same job, different pharmacies. (CR 1004, Fonge 72/12).  She is a female from Cameroon, West Africa. (CR 989, Fonge 9/5).  Kim Le first became Anne Fonge's Operations Manager around 2009.  (CR 999, Fonge 50/1).  Being a Pharmacy Supervisor is a very stressful job.  (CR 995, Fonge 35/20).  She and Kim Le get along really well.  (CR 1003, Fonge 65/23).  Anne Fonge enjoys working with Kim Le.  Anne Fonge is not aware of Kim Le ever saying anything disparaging about Anne Fonge.  (CR 1003, Fonge 68/5).  Anne Fonge is not aware of Kim Le doing anything unfair to her.  (CR 1011, Fonge 98/15).  Kim Le is fully supportive of Anne Fonge.  (CR 1004, Fonge 70/10).  Anne

Fonge has no complaints about Kim Le as a supervisor. (CR 1004, Fonge 70/14). Anne Fonge is not aware of Kim Le ever saying anything bad about Anne Fonge. (CR 1003, Fonge 67/11). Kim Le is the perfect manager. (CR 1010, Fonge 95/21). Kim Le does not call her other supervisors every day before work, after work, or twenty times a day. (CR 950, Le 95/9). Kim Le has never done anything to humiliate Anne Fonge or to make her look bad to Dr. Hoffman or anyone else. (CR 1010, Fonge 93/21). Anne Fonge is never managed to the point where she is about to have a breakdown or needs a leave of absence. (CR 1010, Fonge 93/17). Anne Fonge is never written up. (CR 1003, Fonge 66/2). Mae McEuen is treated much better than William Parker. Mae McEuen is the Pharmacy Supervisor for the Baytown Pharmacy (CR 1017, McEuen 6/15). She is a Malaysian female. (CR 1018, McEuen 12/22). She first works with Kim Le at the Aldine Pharmacy. (CR 1019, McEuen 13/10). Kim Le is the Pharmacy Supervisor at Aldine at that time. (CR 1019, McEuen 13/13). She is the head person at the Pharmacy. (CR 1019, McEuen 13/15). All of Kim Le's pharmacists at Aldine are Vietnamese,

like her. (CR 945, Le 74/8). Kim Le participates in her panel interview before Mae McEuen is hired. (CR 1020, McEuen 17/1). Mae McEuen's first job as a pharmacist is with HCHD. (CR 1019, McEuen 15/17). She starts in October of 2008 as a floating pharmacist. (CR 1020, McEuen 19/13). She remains a floating pharmacist for two and a half years, through 2011. (CR 1020, McEuen 20/5). She fills in for pharmacists who are sick or on vacation. (CR 1020, McEuen 20/23). The Pharmacy Supervisor is the top person at any given pharmacy. (CR 1021, McEuen 24/22). Mae McEuen becomes Pharmacy Supervisor of the Baytown pharmacy in August of 2011. (CR 1022, McEuen 25/6, CR 1025, 39/4). She has to apply for the position. (CR 1022, McEuen 25/14). Therese Hoffman and the Operations Managers, including Kim Le, are on her panel interview. (CR 1022, McEuen 25/20). Baytown has two pharmacists and six technicians. (CR 1022, McEuen 27/15). There are no men working at her pharmacy. (CR 1023, McEuen 29/22). Eighty percent of the pharmacists are female. (CR 1023, McEuen

29/25). Seventy-five percent of the Operations Managers are female. (CR 1023, McEuen 30/6).

Being a Pharmacy Supervisor is a very stressful job. (CR 1023, McEuen 30/25). Kim Le has been Mae McEuen's Operations Manager since 2011. (CR 1023, McEuen 31/18). Kim Le is the only boss Mae McEuen has had since becoming a Pharmacy Supervisor. (CR 1024, McEuen 33/17). She and Kim Le get along well. (CR 1024, McEuen 33/20, 34/15). Mae McEuen enjoys working with Kim Le.Mae McEuen is not aware of Kim Le ever saying anything disparaging about Mae McEuen. (CR 1030, McEuen 57/12). Kim Le is fully supportive of Mae McEuen. (CR 1024, McEuen 33/23, 34/20, CR 1030, 57/5). Kim Le would usually come to her half-day meetings at her pharmacy. (CR 1026, McEuen 41/2). Mae McEuen has no complaints about Kim Le as a supervisor. (CR 1024, McEuen 33/25, CR 1028, 51/3). She is not aware of any other direct report who has a problem with Kim Le. (CR 1028, McEuen 51/13). Mae McEuen knows of no one else that has complaints about Kim Le. (CR 1028, McEuen 52/1). Mae McEuen is not aware of Kim Le

ever saying anything disparaging or derogatory about Mae McEuen. (McEuen 34/3, 57/2). Mae McEuen is not aware of Kim Le ever doing anything to hurt Mae McEuen's career at HCHD. (CR 1029, McEuen 56/23). Mae McEuen has no complaints and is completely happy about how Kim Le manages her. (CR 1024, McEuen 34/24).

When Mae McEuen becomes a Pharmacy Supervisor, William Parker is the Pharmacy Supervisor at the Settegast pharmacy. (CR 1025, McEuen 38/20). Mae McEuen talks to Kim Le between zero and several times a day, depending on what is going on at the pharmacy. (CR 1027, McEuen 48/23). Kim Le doesn't nitpick or micro-manage Mae McEuen's pharmacy. (CR 1030, McEuen 57/16). Kim Le never calls Mae McEuen several times a day to discuss attendance. (CR 1030, McEuen 57/25). Kim Le is not hands-on with Mae McEuen's clocking-in or clocking-out procedures. (CR 1030, McEuen 59/9). Kim Le never tells Mae McEuen to write up employees who are not tardy per HCHD policy. (CR 1030, McEuen 59/19). No one who is six minutes late should be written up. (CR 1030, McEuen 60/6). Kim Le

never suggests that an intern watch what Mae McEuen is doing. (CR 1030, McEuen 58/13). Kim Le has never done anything to humiliate Mae McEuen or to make her look bad to Dr. Hoffman or anyone else. (CR 1031, McEuen 61/8). Mae McEuen is not accused of writing an anonymous letter about pharmacy errors. (CR 1031, McEuen 61/21). Mae McEuen is never told anything negative about the number of help-desk tickets are generated when new software is brought out. (CR 1031, McEuen 63/13). Software issues were requiring them to do numerous things manually that the computer was supposed to do. (CR 1031, McEuen 64/6). Across the board people are having problems with the new software. (CR 1031, McEuen 64/17). Wait times are not supposed to be an issue. (CR 1031, McEuen 63/17). Mae McEuen is never written up or warned. (CR 1030, McEuen 58/23).

Mae McEuen is allowed to work at Kirby, where Kim offices, after meetings there. (CR 1028, McEuen 49/13). Kim Le will take three of her supervisors, Mae McEuen, Anne Fonge, and Amber Juarez to lunch. (CR 1028, McEuen 50/15).

12/22/11    William Parker states to Kim Le that checking to see who is tardy for the day is difficult because of new software updates that are rolling out. She is still persistent on tardies instead of the pharmacy operation issues at hand with the new roll out. William Parker opens more than 100 help-desk tickets because of software issues and does not get support from Kim Le. There are also new workarounds every week for staff because of software issues. Kim Le takes some of these issues and documents them against William Parker because the system fails. Another examples of things William Parker is blamed for that are not his fault is the cashiering system not picking up prescriptions. Kim Le's main focus is tardies with all of these issues going on.

2/28/12    William Parker is issued a counseling from Kim Le for poor performance, which is not true. There is not a lot of counseling of supervisors. (CR 976, Hoffman 47/10). Counseling of supervisors are few and far between. ( CR 976, Hoffman 47/10). William Parker is forced to go to other pharmacies to learn best practices. (CR 976, Hoffman 46/10). Kim Le tells her other two supervisor's negative things about William Parker. Examples are:

-12-

I don't think William Parker is always on site, he doesn't know what he's doing, and he's just a mess.

6/10/12  William Parker's 2012 performance evaluation is significantly lower. He receives a 256 for 2011-2012 which only meets minimum expectations. (CR 681).

8/23/12  William Parker has to take a leave of absence because of the stress and hostility at work. (CR 917, Parker 149/12). William Parker is suffering from increased blood pressure, headaches, dizziness and anxiety. (CR 917, Parker 150/14). He is seeing a physician and a psychiatrist regarding the stress and hostility at work. (CR 919, Parker 158/23).

9/28/12  William Parker files a charge of discrimination complaining about race discrimination, gender discrimination and retaliation. (CR 581). That charge specifically states that William Parker is complaining because "on August 23, 2012, I was taken off work by my physician because of the hostile work environment Ms. Thi Le is subjecting me to which is causing me undue stress." In his Intake Questionnaire, William Parker makes it clear that he is complaining about termination (constructive discharge), due to

discrimination and retaliation. William Parker answers the following questions as follows:

DESCRIBE WHAT ACTION THE COMPANY TOOK AGAINST YOU

I was being discriminated against and passed over for promotion because of my race and gender. After I complained to my director about this discrimination, my supervisor retaliated against me and created a hostile work environment for me, resulting in my constructive discharge.

IDENTIFY WHETHER YOU BELIEVE THE ACTION WAS BECAUSE OF YOUR **RACE, SEX, NATIONAL ORIGIN, AGE, RELIGION, COLOR OR DISABILITY, AND EXPLAIN WHY**

Race, Gender and Retaliation. I am a Pharmacy Supervisor for Harris Health Systems. My problems began when Kim-Thoa Thi Le became my manager. She is Asian. She treated me differently because I am a black male. I was treated differently than my female counterparts, one of whom is Asian. I was passed over for several promotions for which I was the most qualified applicant. I went to my director, Therese Hoffman, to complain about this discrimination. I was then retaliated against by my manager. I was written up for poor performance, which was not true. My performance evaluations were lowered, which was unwarranted. I was scrutinized, micro-managed and constantly criticized to the point where it created a hostile work environment. I had to take a leave of absence on August 23, 2012 because of the stress. I will be constructively discharged by my employer on October 30, 2012.

10/16/12     William Parker gives notice of his resignation, effective October 30, 2012. (CR 920, Parker 162/8).

-14-

10/17/12       William Parker is sent a letter which claims that he is being terminated for "working another job while on Family and Medical Leave . . . ." Ryan Roux and HR make the decision to fire William Parker. (CR 984, Hoffman 78/11). William Parker is not working anywhere else at the time, and the stated reason for terminating him is false. William Parker is replaced by a white male named Shawn Gautreaux. (CR 1007, Fonge 82/8).

## SUMMARY OF THE ARGUMENT

This is a plea to the jurisdiction in a discrimination and retaliation case. Plaintiff only needs to show direct evidence of his claims, or make a *prima facie* case of discrimination or retaliation for the plea to the jurisdiction to be denied. HCHD has the burden at this stage of the proceedings to negate an element of Plaintiff's prima facie case as a matter of law. HCHD has not done this with respect to any of Plaintiff's six claims. HCHD has waived its complaints regarding the Court's denial of it's plea to the jurisdiction regarding Plaintiff's gender discrimination claims. Plaintiff has shown direct evidence and made a *prima facie* case with respect to his race discrimination claims. Plaintiff has made a *prima facie* case to support his two retaliation claims. The denial of HCHD's plea to the jurisdiction should therefore be affirmed.

-15-

## ARGUMENT & AUTHORITIES

**I.      Standards - Plea To The Jurisdiction.**

In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000). When a party has filed a plea to the jurisdiction challenging the pleadings, the trial court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *see also, City of Houston v. Kiju Joh*, 359 S.W.3d 895, 897 (Tex. App.-Houston [14th Dist.] 2012, no pet.). The plaintiff must allege facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Barto Watson, Inc. v. City of Houston*, 998 S.W.2d 637, 640 (Tex. App.-Houston [I" Dist.] 1999, pet. denied). The plaintiff's factual allegations are taken as true. *Id*. The merits of the plaintiff's case are not considered in the determination of a plea to the jurisdiction. *Freeman v. Harris County*, 183 S.W.3d 885, 887-88 (Tex.App.-Houston [151 Dist.] 2006, pet. denied).

If jurisdictional facts are not alleged, a party has a right to amend its pleadings to cure the pleading defect. *Texas Ass'n of Business*, 852 S.W.2d at 446; *Watson*, 998 S.W.2d at 640. If a pleading defect is curable by amendment, it should be challenged by special exceptions or by a motion to abate. *Watson*, 998 S.W.2d at 640. If and

when those special exceptions are heard and granted, and if and when the plaintiff does not adequately amend, then the suit can be properly dismissed. *Id.*

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded an opportunity to amend. *Carlson v. City of Houston*, 309 S.W.3d 579, 583 (Tex.App.-Houston [141h Dist.] 2010, no pet.). "Stated another way, 'the trial court must allow a plaintiff the opportunity to amend its pleadings so long as the plaintiff has not affirmatively pled itself out of court. '" *Godley I.S.D. v. Woods*, 21 S.W.3d 656, 658 (Tex.App.-Waco 2000, pet. denied).

## II.    Standard of Review.

Because subject-matter jurisdiction is a question of law, this Court reviews a trial court's ruling on a plea to the jurisdiction *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S. W .2d 922, 928 (Tex.1998). In applying its *de novo* review, when a plea to the jurisdiction challenges the plaintiff's pleading, the Court first must determine if, construing the pleading liberally in the plaintiff's favor, the plaintiff has alleged facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Texas Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

If the plea to the jurisdiction challenges the existence of jurisdictional facts, the Court looks beyond the plaintiff's pleading and considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227; *Bland*, 34 S.W.3d at 555. In considering the evidence, the Court applies a standard of review that generally mirrors the traditional summary-judgment standard of review. *Miranda*, 133 S. W.3d at 228.

Under this standard, the governmental entity is required to meet the summary-judgment standard of proof for its assertion that the trial court lacks jurisdiction, *i.e.*, no disputed issue of material fact. *Id.* Then, the plaintiff must show there is a disputed material fact regarding the jurisdictional issues to defeat the government's plea to the jurisdiction. *Id.* An appellate court is required to take as true all evidence favorable to the non-movant, and resolve any doubts and indulge every reasonable inference in the non-movant's favor. *Id*.

In its review, the Court does not look to the merits of the cause of action, but considers only the pleadings and the evidence relevant to the jurisdictional inquiry. *Id.* at 227. The Court cannot adjudicate the substance of the case but instead determines whether the trial court has the power to reach the merits of the claim. *City of Houston v. S. Elec. Servs., Inc.*, 273 S.W.3d 739, 744 (Tex.App.- Houston [1st

Dist.] 2009, pet. denied) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000)).

## III. HCHD Waived the Right to Complain About the Court's Denial of Its Plea to the Jurisdiction Regarding Plaintiff's Gender Claims.

HCHD erroneously contends that the Court granted its Plea to the Jurisdiction regarding Plaintiff's gender claims. Appellant's Brief at 1. As is shown by the Docket Sheet and the JIMS Activity Sheet, the Court only granted an interlocutory summary judgment on Plaintiff's gender claims. (CR 1062, 1064). Docket entries may be used by the appellate courts as an indication of what transpired in the trial court. *Gotch v. Gotch*, 416 S.W.3d 633, 636 n.8 (Tex. App.–Houston [14th Dist.] 2013, no. pet.) Since HCHD does not complain about the Court's denial of its plea to the jurisdiction on Plaintiff's gender claims, those complaints have been waived.

## IV. Direct Evidence of Discrimination Gives the Court Subject-Matter Jurisdiction Over Plaintiff's Disparate-Treatment and Hostile-Work-Environment Race Discrimination Claims.

Direct evidence of what a Defendant did and said is one way to prove a discrimination case in Texas. *Mission Consolidated Independent School District v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). Direct evidence of discrimination gives the Court subject-matter jurisdiction. *Id.* At 642. There is direct evidence that race and gender play a role in Kim Le's treatment of William Parker. Anne Fonge relayed

to William Parker that Kim Le stated to Anne Fonge, when talking about William Parker, that "black males don't work.  William Parker is just here to sit on the clock." (CR 895, Parker 61/13).   Comments like these from manager-decision makers constitute direct evidence of race and gender discrimination.   "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Portis v. First Nat. Bank of New Albany, Miss*., 34 F.3d 329-30 (5th Cir. 1994) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1984)). Use of racial epithets in an employment context is direct evidence of discrimination sufficient to defeat summary judgment. *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993).  The most obvious way of showing an unlawful employment practice is to offer "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents..." *See Knatt v. Hospital Service Dist. No. 1 of East Baton Rouge Parish*, 327  Fed. Appx. 472 (5th Cir. 2009).

Thus, "direct evidence" cases are those in which the evidence would serve to prove unlawful discrimination "without any inferences or presumptions."   *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993).  Examples include "epithets or slurs uttered by an authorized agent of the employer. . . When produced, such 'direct' evidence will **without more** ordinarily suffice to show that an adverse

employment condition, or limitation on an employment opportunity, was imposed 'because of' the plaintiff's protected group characteristic.'" *Brown*, 989 F.2d at 861 (emphasis added).

This case does not involve the stray or remote use of a racial slur in the workplace by non-decision-makers as HCHD contends. Here, William Parker produced direct evidence of discrimination by his direct supervisor who discriminated against him, created a hostile work environment for him and constructively discharged him. Thus, William Parker presented direct evidence of the use of epithets and animus, which constitutes direct evidence of discrimination sufficient to defeat summary judgment. *Brown*, 989 F.2d at 861. HCHD further tries to avoid these facts by contending they are hearsay. These comments are admissions against interest, and were properly considered by the Court in denying HCHD's plea to the jurisdiction. Furthermore, any complaints about hearsay have been waived by HCHD due to its failure to get a ruling on its hearsay objections from the Court. *Vice v. Kasprzak*, 318 S.W.3d 1, 11 (Tex. App.–Houston [1ˢᵗ Dist.] 2009, pet denied). Since summary judgment is not appropriate for this case, clearly a claim has been brought by William Parker sufficient to give the Court subject-matter jurisdiction. *Mission Consolidated Independent School District*, 372 S.W.3d at 638.

**V.** **Plaintiff Made a *Prima Facie* Case of Disparate-Treatment and Hostile-Work-Environment Race Discrimination.**

Under the TCHRA, it is unlawful for an employer to discriminate against an employee on the basis of race, among other traits. *See* TEX. LAB.CODE ANN. § 21.051-.556 (Vernon 2006). The general purpose of the Act is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. *Id*. at § 21.001(1). Therefore, Texas Courts look to analogous federal law and the cases interpreting them to guide their reading of the Act. *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex.2001) (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1996)). "An employer commits an unlawful employment practice if because of race . . . the employer . . . discriminates in any other manner against an individual in connection with the terms, conditions or privileges of employment. § 21.051(1).

A plaintiff may establish a claim of employment discrimination through direct or circumstantial evidence. *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). In most cases it is difficult for a victim of employment discrimination to uncover and develop direct evidence of unlawful employment practices that have affected him or her adversely. *See Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985) (Employers are rarely so cooperative as to include

a notation in the personnel file, "fired due to age").  Direct evidence of an employer's discriminatory intent is rare, and plaintiffs ordinarily prove pretext by circumstantial evidence.  *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996).  The fact finder may rely on all of the evidence in the record to draw an inference of discrimination.  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996).

To establish a *prima facie* disparate-treatment discrimination claim, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) who suffered an adverse employment action; and (4) non-protected class employees were not treated similarly.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 S.Ct. 668, 93 L.Ed.2d 1817 (1973). *See also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The plaintiff's burden of establishing a *prima facie* case "is not onerous." *Burdine*, 450 U.S. at 253.  Only a minimal showing is needed to establish a *prima facie* case. *Id.*; *Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 493 (Tex. App. – Amarillo 2009, pet. denied).  A plaintiff need only produce more than a scintilla of evidence to raise a fact issue to defeat summary judgment. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *See also Ptomey*, 277 S.W.3d at 493.  More than a scintilla of evidence exists when the evidence "rises to a level that would

enable reasonable and fair-minded people to differ in their conclusions." *Ridgway*, 135 S.W.3d at 601.

William Parker has made a prima facie case of disparate treatment discrimination. It is undisputed that he meets the first two elements of a *prima facie* case. HCHD erroneously contends that it has established as a matter of law that William Parker was not constructively discharged and that he was not similarly situated to Anne Fonge and Mae McEuen, negating elements three and four of his *prima facie* case.

Constructive discharge is one way of demonstrating an adverse employment action for the purpose of proving an unemployment discrimination claim. *Solis v. San Antonio Indep. School District*, 2010 WL 4929111 (W.D. Tex. Nov. 30, 2010). Constructive discharge is defined as "an employee's reasonable decision to resign because of unendurable working conditions." *Baylor Univ. v. Coley*, 221 S.W.3d 599, 605 (Tex. 2005). In order to prove objectively intolerable working conditions sufficient to support a constructive discharge claim, a plaintiff must show aggravating circumstances. A common allegation relied upon to establish aggravating circumstances is that the employer created or allowed the creation of an "atmosphere of harassment" or hostility that rendered working conditions intolerable. *See e.g. Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992). Badgering or

harassing the employee is sufficient to meet this requirement. *See e.g. Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559 (1st Cir. 1986). After complaining of discrimination, William Parker was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at in front of his employees, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it created a hostile work environment, made him ill, and ended his career with HCHD. These facts support William Parker's claim that he was constructively discharged, and HCHD has not met its burden of showing that he was not constructively discharged as a matter of law.

HCHD completely misconstrues the law on similarly situated employees. Employees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors and conduct. *Yselta Independent School District v. Monarrez*, 177 S.W.3d 915 (Tex. 2005). William Parker, Anne Fonge and Mae McEuen had the exact same job for the exact same supervisor. They did the exact same things, just at different pharmacies. HCHD states that William Parker is not similarly situated because he had discipline problems that the others did not. That is exactly the point of his lawsuit. The only reason he had discipline

problems that the others did not is because his supervisor did not like him because of his race and gender. You could never bring a disparate treatment case if you have to have the exact same disciplinary record as the people who are not being discriminated against. The whole point is that you are being treated differently. You don't get to discriminate and retaliate against an employee and then use the fact that they were treated worse as a way to differentiate them from employees who were doing the same job and who were not being discriminated against.

William Parker presented plenty of evidence that he was treated differently than similarly situated employees who were not in his protected class. Kim Le completely supported her female supervisors but went out of her way to sabotage William Parker's career. Kim Le completely supported her female supervisors to Therese Hoffman but said bad things about William Parker. William Parker was counseled for software delays that his counterparts were not. There were new workarounds every week for staff because of software issues. Kim Le took some of these issues and documented them against William Parker because the system fails. Another examples of things William Parker was blamed for that were not his fault was the cashiering system not picking up prescriptions. William Parker was the only supervisor under suspicion for writing an anonymous letter. William Parker was the only supervisor counseled. William Parker was forced to go to other pharmacies to

learn best practices. William Parker was the only supervisor Kim Le disparaged to other supervisors. Kim Le told her other two supervisors negative things about William Parker. Examples are: I don't think William Parker is always on site, he doesn't know what he's doing, and he's just a mess. William Parker was the only supervisor who was disrespected by Kim Le. Kim Le spoke with William Parker in a hostile, demeaning tone. Kim Lee yelled at William Parker. She demeaned him in front of his staff. William Parker was the only supervisor called out because drugs were not being flagged that were expiring within one year. The wholesaler was sending the pharmacy short-dated drugs on a daily basis, and this was known by Kim Le. She complained about these drugs being on the pharmacy shelf, when she knew they were supplied that way. William Parker was the only supervisor who was forced to write up employees for erroneous reasons. Kim Le instructed William Parker to write up employees for clocking in after the scheduled time but before the allotted grace period.

The elements of a prima facie hostile-work-environment discrimination case are 1) the employee belongs to a protected group; 2) the employee was subject to unwelcome harassment; 3) the harassment complained of was based on a protected factor; and 4) the harassment complained of affected a term, condition or privilege of employment. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2001).

HCHD erroneously contends that there is no evidence to support the third and fourth element of this cause of action. There is direct evidence that race and gender played a role in Kim Le's treatment of William Parker. Anne Fonge relayed to William Parker that Kim Le stated to Anne Fonge, when talking about William Parker, that "black males don't work. William Parker is just here to sit on the clock." There is also evidence that Kim Le was retaliating against William Parker. After complaining of discrimination, William Parker was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized.

There is also evidence that the harassment complained of affected a term, condition or privilege of William Parker's employment. After complaining of discrimination, William Parker was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at in front of his employees, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it made him ill and ended his career with HCHD.

## VI.    Plaintiff Made a *Prima Facie* Case of Retaliation.

William Parker makes two claims of retaliation. The first claim is that Kim Le retaliated against William Parker after he reported to her boss that she was discriminating against him, ultimately leading to his constructive discharge. The second claim is that HCHD retaliated against William Parker for firing him for pretextual reasons eighteen days after he filed a charge of discrimination. He has made a prima facie case for both of his claims.

Chapter 21 of the Texas Labor Code prohibit retaliation against an employee complaining of discrimination or harassment based on race or gender. TEX. LAB. CODE § 21.055. The TCHRA prohibits retaliation for engaging in protected activity. The TCHRA provides:

An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter:

(1)    opposes a discriminatory practice;

(2)    makes or files a charge;

(3)    files a complaint; or

(4)    testifies, assists, or participates in any manner in an investigation, proceeding or hearing.

-29-

TEX. LAB. CODE ANN. § 21.055 (Vernon 2012).

In order to establish a prima facie case of retaliation, a plaintiff must show that he: (1) "participated in" or "opposed" a protected activity; (2) suffered an adverse employment action, and 3) a causal connection existed between the opposition or participation in the protected activity and the adverse employment action. *Herbert v. City of Forest Hill*, 189 S.W.3d 369 (Tex. App.-Fort Worth 2006, no pet.); *Collins v. Baptist Mem. Geriatric Ctr.*, 937 F.2d 190, 193 (5th Cir. 1991); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir 1997); *Long v. Eastfield College*, 88 F.3d 300, 305 (5th Cir. 1996) (rejecting Plaintiff's claim of a sexually hostile work environment, but allowing plaintiff to proceed on retaliation claim and assert that employers retaliated against her for "protesting" what she "believed" to be a sexually hostile environment). As shown by *Long*, retaliation claims are not contingent upon the success of the underlying discrimination claim. *Id.* To win a retaliation claim, an employee does not have to show that he or she was actually discriminated against on the basis of a protected classification. *See Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 (5th Cir. 2000).

Generally, almost any activity that is in opposition to discrimination or that constitutes participation in a claim or procedure under Title VII constitutes protected activity. An internal grievance alleging conduct that is actually prohibited reasonably

equates to opposition to discriminatory conduct, regardless of whether a formal complaint has been filed. *City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008). Complaining about a client's sexual comments and offering to assist a co-worker with her EEOC complaint were protected activities. *Cain v. Blackwell*, 246 F.3d 758, 761 (5th Cir 2001). The employee need not have initiated the protected activity. *Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271 (2009) (mentioning an employee's own experience of sexual harassment during unrelated internal investigation is protected activity).

William Parker participated in protected activity. On November 29, 2011, William Parker met with Therese Hoffman, and expressed to her that he believed that he was being treated differently than his counterparts. William Parker told Therese Hoffman that he was being treated differently than Kim Le's other supervisors. (CR 982, Hoffman 71/6). William Parker gave her many examples of how Kim Le was treating him differently than his counterparts, and told Dr. Hoffman that he thought he was being discriminated against due to his race and gender. (CR 869, ¶ 3, CR 896, Parker 68/8, CR 900, Parker 81/6). William Parker also gave Therese Hoffman a written document that encapsulates being discriminated against because of his race and gender. (CR 904, Parker 99/19).

An adverse employment action as required for proof of a retaliation claim in the employment context includes anything that would dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53 (2006). A single meeting to attack and humiliate a Plaintiff has been held sufficient to satisfy the "adverse employment action" element of a claim of retaliation. *See, e.g. Donaldson v. CDB Inc.*, No. 08-60666, 2009 WL 1916466, *13 (5th Cir. July 6, 2009). After complaining of discrimination, William Parker was blamed for numerous pharmacy problems that were unrelated to his performance, required to improperly write up his employees, badgered about attendance and tardiness, screamed and yelled at, written up for poor performance, had his performance evaluation lowered, and was scrutinized, micro-managed and constantly criticized to the point where it created a hostile work environment, made him ill, and ended his career with HCHD. Seeing how William Parker was treated for complaining about discrimination might dissuade someone else from making a complaint. This creates a fact issue regarding whether he was subjected to an "adverse employment action."

A causal link exists between William Parker's protected activity and the retaliation he experienced. Temporal proximity has been deemed a critical factor in determining causation. *See Eugene v. Rumsfeld*, 168 F.Supp.2d 655, 682 (S.D. Tex.

2001). Because of the proximity in time, some evidence of a causal link exists. *See, e.g., Romo v. Texas Dept. Of Transportation*, 48 S.W.3d 265, 273 (Tex. App. – San Antonio 2001, )(citing *Fields v. Teamsters Local Union 988*, 23 S.W.3d 517, 529 (Tex. App. – Houston [1st Dist.] 2000, pet. denied) (proximity of time may be considered if not too distant); *Webb v. Cardiothoracic Surgery Assoc. of N. Tex., P.A.*, 139 F.3d 532, 540 (5th Cir. 1998)(court should consider whether disparate treatment began shortly after protected activity occurred)). In fact, evidence that the adverse employment action occurred shortly after the employer became aware of the protected activity is sufficient to satisfy the less onerous burden of making a prima facie case of causation. *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998). All of these adverse actions occurred immediately after William Parker complained to Therese Hoffman on November 29, 2011, and subsequently meeting with Therese Hoffman and Kim Le regarding his complaints on December 12, 2011. The adverse actions continued until William Parker was so ill that he had to take and FMLA leave. William Parker was gone less than nine months after he complained. William Parker has made a *prima facie* case of retaliation on his first claim.

HCHD next claims that William Parker is precluded from complaining about his constructive discharge because he failed to exhaust his administrative remedies. William Parker was constructively discharged on August 23, 2012, when he was so

sick from the hostile work environment at HCHD that he had to take a medical leave. He never worked at HCHD again after that date, and was planning on resigning before he was fired. He filed a charge of discrimination on September 28, 2012. That charge specifically stated that William Parker was complaining because "on August 23, 2012, I was taken off work by my physician because of the hostile work environment Ms. Thi Le is subjecting me to which is causing me undue stress." That is sufficient to put HCHD on notice that he was complaining about conduct that meets the requirements of constructive discharge. (See above). Furthermore, William Parker specifically told the EEOC that he was being constructively discharged in his Intake Questionaire, which said the following:

DESCRIBE WHAT ACTION THE COMPANY TOOK AGAINST YOU

I was being discriminated against and passed over for promotion because of my race and gender. After I complained to my director about this discrimination, my supervisor retaliated against me and created a hostile work environment for me, resulting in my constructive discharge.

IDENTIFY WHETHER YOU BELIEVE THE ACTION WAS BECAUSE OF YOUR **RACE, SEX, NATIONAL ORIGIN, AGE, RELIGION, COLOR OR DISABILITY, AND EXPLAIN WHY**

Race, Gender and Retaliation. I am a Pharmacy Supervisor for Harris Health Systems. My problems began when Kim-Thoa Thi Le became my manager. She is Asian. She treated me differently because I am a black male. I was treated differently than my female counterparts, one of whom is Asian. I was passed over for several promotions for which I was the most qualified applicant. I went to my director, Therese Hoffman, to complain about this discrimination. I was then retaliated against by my manager. I was written up for poor performance, which was not true. My performance evaluations were lowered, which was unwarranted. I was scrutinized, micro-managed and constantly criticized to the point where it created a hostile work environment. I had to take a leave of absence on August 23, 2012 because of the stress. I will be constructively discharged by my employer on October 30, 2012.

Courts are required to construe a claimant's charge of discrimination with "utmost liberality." *Santi v. Univ. of Tex. Health Science Center at Houston*, 312 S.W.3d 800, 804 (Tex. App.–Houston [1st Dist.] 2009, no pet); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.–Texarkana 2008, pet denied). Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies. *Bartosh* at 321. Courts should bear in mind that charges are generally prepared by laypersons untutored in the rules of pleading. *Id.* The

underlying policies are not served by limiting judicial relief to technical niceties of the language used by an often unlettered and unsophisticated employee in filing his or her initial grievance with the EEOC. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970). Specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow. *City of Waco v. Lopez*, 259 S.W.3d 147, 151-52 (Tex. 2008). William Parker gave the EEOC an intake questionnaire that made it clear that he was complaining about retaliation that resulted in his termination (constructive discharge). *Santi* at 804, *Bartosh* at 321. The charge adequately conveys that he is complaining about a hostile work environment that made him so ill that he had to leave work.

William Parker's second retaliation claim is that HCHD retaliated against him by firing him for pretextual reasons eighteen days after he filed a charge of discrimination. On its face, this claim clearly makes a prima facie case of discrimination. Filing a charge of discrimination is protected activity. Being fired is an adverse employment action. An eighteen day gap constitutes a causal connection between the opposition or participation in the protected activity and the adverse employment action.

HCHD erroneously contends that William Parker needed to amend his charge. TCHRA Plaintiffs are not required to exhaust administrative remedies as to a

retaliation claim if the retaliation occurs after the claimant has filed an EEOC charge alleging some other theory of illegal conduct. *Elgaghil v. Tarrant County Junior College*, 45 S.W.3d 133, 141-42 (Tex. App–Fort Worth 2000, pet. denied); *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 738 (Tex. App–Houston [14th Dist.] 1999, no pet.). William Parker was not required to return to the EEOC after HCHD "terminated" him, because he already complained that the actions against him constituted discrimination and retaliation which resulted in his termination (constructive discharge). HCHD also tries to claim that Ryan Roux didn't know about a charge that had been filed eighteen days earlier when he decided to fire William Parker. As unbelievable as this contention is, it is also immaterial. According to Therese Hoffman, Ryan Roux and HR make the decision to fire William Parker. (CR 984, Hoffman 78/11). HCHD does not identify who else was involved in the decision to fire William Parker, and does not provide proof that they knew nothing about his charge of discrimination.

## CONCLUSION & PRAYER

For all of these reasons, the Court should affirm the trial court's denial of HCHD's Plea to the Jurisdiction and grant William Parker all other relief to which he is entitled.

Respectfully submitted,

Craig R. Keener, P.C.

  /s/ Craig R. Keener
By: Craig R. Keener
State Bar No. 11167875
1005 Heights Boulevard
Houston, Texas  77008
CRKeener@aol.com
(713) 529-0048 Telephone
        (713) 529-2498 Facsimile

COUNSEL FOR APPELLEE
WILLIAM PARKER

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1.      This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because the document was is a computer-generated document in WordPerfect X3 in 14-point.

2.      This brief complies with the Maximum Length requirements of TEX. R. APP. P. 9.4(i)(2)(B) of 15,000 word limit for a brief.

3.      This Brief contains 9,453 words, excluding the parts of the response exempted by TEX. R. APP. P. 9.4(i)(1).


  /s/ Craig R. Keener                                      August 11, 2015


Craig R. Keener, P.C.      .
(Firm)


# CERTIFICATE OF SERVICE

I certify that I have served a true copy of Appellee's Brief on this 11th day of August, 2015 by e-filing on the following counsel of record:


Bruce S. Powers
Assistant County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002


/s/ Craig R. Keener
Craig R. Keener