NO. 07-06-0332-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JANUARY 20, 2009

_____


DR. NYLA PTOMEY, APPELLANT

v.

TEXAS TECH UNIVERSITY, APPELLEE


_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-523,777; HON. WILLIAM C. SOWDER, PRESIDING

_____

Before CAMPBELL and PIRTLE, JJ., and BOYD, S.J.[1]


OPINION


Appellant, Dr. Nyla Ptomey, appeals a summary judgment granted in favor of appellee Texas Tech University on each of her claims of unlawful age and sex discrimination and retaliation. Finding by its traditional motion for summary judgment Texas Tech conclusively proved a legitimate, non-discriminatory reason for the adverse

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2005).

employment actions of which Ptomey complains and that the evidence does not raise a fact issue of pretext, we will affirm.

## Background

In 1990, Ptomey assumed the associate director of housing for student services position at Texas Tech. For 1993, she received an "Outstanding Achievement Award" for work in the housing and dining services office at Texas Tech. On job evaluations conducted during 1993, 1994, and 1995 Ptomey received an "outstanding" overall rating from her supervisor, Dr. James Burkhalter. In the evaluations, Burkhalter noted Ptomey's supervisory skills were "excellent" or "very good."

During July 1997, Ptomey attempted to terminate or reassign staff person D'aun Green, prompting a complaint from Green. Contemporaneously, several of Ptomey's current and former subordinates presented Burkhalter with lengthy written complaints about Ptomey. The complaints uniformly portrayed Ptomey as an inflexible authoritarian manager who fostered an unpleasant work environment. They voiced an absence of staff confidence in Ptomey and blamed her for a general negative perception of the division. Ptomey was placed on paid administrative leave. In an August 18 letter, Burkhalter offered her terms of separation from Texas Tech. In September 3 letter to Ptomey, Burkhalter stated problems with her work related back to the inception of her employment at Texas Tech. He expressed doubts that the "situation" could be "resolve[d] in a positive manner" and again offered terms of separation.

During August and September 1997, Ptomey was absent from her position on medical leave. At this time, Burkhalter implemented changes in Ptomey's department including her reassignment and allocation of certain duties to others. Contending this action was a demotion while on approved leave under the Family and Medical Leave Act,[2] Ptomey complained to vice president of student affairs Dr. Robert Ewalt.

During 1998, Burkhalter implemented other changes in Ptomey's job responsibilities that she also considered demotions. Ptomey and Texas Tech officials engaged in a regular exchange of writings whose substance was frequently critical and even accusative. In a September 21, 1999 letter to Ewalt, Ptomey expressed the belief that she was demoted and excluded by Burkhalter because he accepted the 1997 staff complaints as true.

On October 1, 1999, Ptomey filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging Texas Tech, largely through Burkhalter, engaged in unlawful discrimination because of her age, sex, and disability. The EEOC was unable to substantiate the complaints and issued a right to sue letter on October 31, 2001. Ptomey did not file suit.

In March 2000, Ptomey received an evaluation from Burkhalter that she labeled the worst of her career. Following a meeting with Ptomey, Burkhalter amended the evaluation by memo. Ptomey did not find the changes acceptable. According to Ptomey, when she

---

[2] 29 USCA § 2601 *et seq*. (West 1999).

complained to university personnel director James Brown of continuing discrimination by Burkhalter, he replied, "'Why don't you leave?'"

In an August 2000 e-mail to Burkhalter, Ptomey complained of not receiving a professional publication his office was responsible for delivering. She also complained of exclusion from departmental matters and criticized the professionalism of his office. By letter, Burkhalter responded that Ptomey had pushed his "goodwill and tolerance beyond their limits." He placed her on a five-day suspension without pay.

During June 2001, Ptomey was assigned the position of director of college development. The chief responsibility of this position was fund raising for the department of housing and dining services. With the position change, Ptomey received a pay grade reduction although her salary remained unchanged. D'aun Green was assigned Ptomey's position as associate director of housing. Ptomey viewed her reassignment a demotion and complained to her superiors. Sean Duggan, director of housing and residential life, responded by e-mail that if Ptomey was not interested in the position she should tender her resignation.

The summary judgment record contains the affidavit of Dr. Michael Shonrock, Texas Tech's vice president of student affairs. The affidavit states that Texas Tech faced a "severe budget shortfall" in 2001 and reduced funding for fiscal year 2002. These factors coupled with other existing liabilities in the division of student affairs resulted in "an aggressive effort to reduce operating expenses." The effort included the elimination of sixty-six "FTE's," or full-time equivalent positions, in the division, and thirteen vacant

positions were left unfilled for a year.[3]  The Wiggins dining hall was closed.  In a March 2002 memo to Burkhalter, Duggan recommended elimination of the director of college development position as a cost-saving move.  According to Duggan, the costs of sustaining the position "are far outweighing the benefits to the department."  Burkhalter, Brown, Shonrock, and university EEO director Julio Llanos approved the recommendation.  According to Shonrock's affidavit, the essential responsibilities for the position on its elimination were distributed among seventeen department and division directors.  Eight of these directors were female and twelve were over age forty.

Ptomey was told of the elimination of her position in an April 10, 2002 meeting.  She was placed on leave with pay status through August 31, 2002.  Also during April, Duggan received a $5,000 salary increase.

Ptomey filed a complaint against Texas Tech with the EEOC on July 23, 2002, alleging that on April 10, 2002, she was the victim of unlawful age and sex discrimination and retaliation for filing the 1999 EEOC complaint.  The EEOC issued a right to sue letter after its investigation failed to establish actionable conduct.

Ptomey filed suit under sections 21.051 and 21.055 of the Labor Code[4] alleging unlawful age and sex discrimination, retaliation, and a continuing course of discriminatory conduct beginning in 1997.  Texas Tech filed a traditional motion for summary judgment

---

[3] The reduction of sixty-six FTE's was accomplished by the elimination of a combination of full-time, part-time, and student positions.

[4] Tex. Lab. Code Ann. §§ 21.051 and 21.055 (Vernon 2006).

on the ground its supporting evidence conclusively proved a legitimate, non-discriminatory reason for elimination of Ptomey's position and her termination. Ptomey responded that the reason was a pretext for discriminatory conduct. The trial court granted the motion and dismissed the entire case. Ptomey timely appealed.

## Issue

In a single issue, Ptomey argues the trial court erred in granting summary judgment.[5]

## Discussion

We review a summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). When conducting a *de novo* review of a traditional summary judgment we apply the following rules:

> (1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts must be resolved in favor of the nonmovant.

*Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex. 1997) (*citing Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985)). If the order granting summary judgment does not specify the ground or grounds on which the trial court relied for its ruling, we will

---

[5] This form of broad appellate issue authorizes argument of all possible grounds on which summary judgment should have been denied. *See Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex. 1970).

affirm the summary judgment if any of the theories advanced by the movant are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex. 1989).

Age and Sex Discrimination

A purpose of the Texas Commission on Human Rights Act (TCHRA) is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."[6] Tex. Lab. Code Ann. § 21.001(1) (Vernon 2006). Therefore, "'analogous federal statutes and the cases interpreting them guide' the reading of the statute." *Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 476 (Tex. 2001). "An employer commits an unlawful employment practice if because of...sex...[or] age the employer...discharges an individual, or discriminates in any other manner against an individual in connection with...the terms, conditions, or privileges of employment." Tex. Lab. Code Ann. § 21.051 (Vernon 2006). When, as here, an employment discrimination case has not been fully tried on the merits, we apply the *McDonnell Douglas Corp. v. Green* burden-shifting analysis. 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-26, 36 L.Ed.2d 668 (1973); *see also Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142-43, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993); *Wal-Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003).

---

[6] The Texas Commission on Human Rights Act is codified at chapter 21 of the Labor Code. Tex. Lab. Code Ann. §§ 21.001-21.556 (Vernon 2006 and Supp. 2008).

Under *McDonnell Douglas*, the plaintiff in an employment discrimination suit must first present evidence of a prima facie case of discrimination. *Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106; *Quantum Chem.,* 47 S.W.3d at 477. In the absence of direct evidence, a plaintiff establishes a prima facie case of unlawful employment discrimination by showing: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside the protected class. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 512-13 (5th Cir. 2001). In a discrimination case, "[a]n adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting, and compensating." *Foley v. Univ. of Houston Sys.,* 355 F.3d 333, 340 (5th Cir. 2003). Because plaintiffs in a workforce reduction case are laid off and frequently unable to prove the replacement element, the Fifth Circuit requires "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."[7] *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 41 (5th Cir. 1996) (*quoting Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 812 (5th Cir. 1991)); *see Russo v. Smith Int'l, Inc.,* 93 S.W.3d 428, 435 (Tex. App.– Houston [14th Dist.] 2002, pet. denied).

---

[7] The Fifth Circuit follows a rule that the "reduction in force" standard applies only when a company lays off members of a protected class, while retaining employees outside the class in similar positions. *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 654 (5th Cir. 1996). Here, the evidence shows at the time of its workforce reduction Texas Tech retained and allocated the essential functions of Ptomey's job to a class of directors that included males and persons under age forty. We assume, but do not decide, that because some of these employees assumed Ptomey's duties, they occupied positions similar to hers.

Once a plaintiff presents a prima facie case of discrimination, the burden shifts to the defendant to articulate "a legitimate, nondiscriminatory reason for the adverse employment action." *Little v. Tex. Dep't of Crim Justice,* 177 S.W.3d 624, 631 (Tex.App.–Houston [1st Dist.] 2005, no pet.) (*citing Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106). The burden is that of production only, not persuasion. *Little,* 177 S.W.3d at 631 (*citing Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106); *Russo,* 93 S.W.3d at 437-38.

If the defendant proffers a non-discriminatory rationale for the adverse employment decision, the burden returns to the plaintiff to show "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106 (*quoting Tex. Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). A plaintiff may attempt to prove intentional discrimination "by showing that [the defendant's] proffered explanation is unworthy of credence." *See id.* (*citing Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). Under the Texas statute, a plaintiff is not required to show the adverse employment action would not have occurred "but for" her age or sex; the statute requires only that she "show that discrimination was a motivating factor in an adverse employment decision." *Quantum Chem.,* 47 S.W.3d at 482.

A plaintiff need only produce more than a scintilla of evidence to raise a fact issue for the trial court's summary judgment to be reversed. *Winters v. Chubb & Son, Inc.,* 132 S.W.3d 568, 576 (Tex.App.–Houston [14th Dist] 2004, no pet.). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-

9

minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v Havner,* 953 S.W.2d 706, 711 (Tex. 1997). The burden of establishing a prima facie case of discrimination is not onerous. *Burdine,* 450 U.S. at 248, 253, 101 S.Ct. at 1089, 1094; *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985) ("[t]o establish a prima facie case, a plaintiff need only make a very minimal showing"); *Quantum Chem.,* 47 S.W.3d at 477.

For purposes of this opinion, we will assume, without deciding, that the summary judgment record contains evidence of a prima facie case of sex or age discrimination. *See Nichols,* 81 F.3d at 41. Texas Tech bore the burden, therefore, to rebut the presumption of discrimination arising from a prima facie case. Its proof, as this is an appeal of a summary judgment, must be conclusive. Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. and Tumor Inst. v. Willrich,* 28 S.W.3d 22, 24 (Tex. 2000) (per curiam).

As noted, Texas Tech offered the affidavit testimony of Shonrock, which detailed a significant budgetary downturn for Texas Tech with a resulting workforce reduction in his division. Ptomey argues Duggan, a superior, received a $5,000 pay increase in the budget that eliminated her position. Otherwise, she does not challenge the existence of Texas Tech's workforce reduction plan, including reassignment of her position's duties. We find the evidence of a legitimate, non-discriminatory purpose sufficient to meet the summary judgment burden of Texas Tech.

It was then incumbent on Ptomey to present more than a scintilla of evidence that Texas Tech's reason for the adverse employment action of which she complains was a pretext for unlawful discrimination.

In addressing this burden, Ptomey relied on the events occurring between 1997 and her termination in 2002 she alleges were discriminatory. Texas Tech contended in the trial court that Ptomey's discrimination claims may not be based on assertedly discriminatory events occurring beyond 180 days prior to the filing of her EEOC complaint on July 23, 2002. A person claiming to be aggrieved by an unlawful employment practice must file a complaint with the Texas Workforce Commission Civil Rights Division not later than the 180th day after the date the alleged unlawful employment practice occurred.[8] Tex. Lab. Code Ann. § 21.202(a) (Vernon 2006). To avoid the bar of limitations, Ptomey relies on the continuing violation doctrine. This theory applies to expand the scope of actionable discriminatory events when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts. *See Webb v. Cardiothoracic Surgery Assocs. of North Texas, P. A.,* 139 F.3d 532, 537 (5th Cir. 1998). As the Fifth Circuit noted in *Webb*,

> [T]he core idea [of the continuing violation theory] is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is

---

[8] Because Texas is a "deferral state" an employee wishing to pursue a federal claim, such as under Title VII, has 300 days to file a complaint with the EEOC. *See Stanley Stores, Inc. v. Chavana,* 909 S.W.2d 554, 557 (Tex.App.–Corpus Christi 1995, writ denied). Ptomey brought her claim under the TCHRA and was accordingly subject to the 180-day limitation period of section 21.202(a). Tex. Lab. Code Ann. § 21.202(a) (Vernon 2006). *See Pope v. MCI Telecom, Corp.,* 937 F.2d 258, 264 (5th Cir. 1991) (holding state limitation period mandatory in TCHRA claim).

11

on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

139 F.3d at 537 (*quoting Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985)). *See Wal-Mart Stores v. Davis,* 979 S.W.2d 30, 31 (Tex.App.–Austin 1998, pet. denied) (applying continuing violation doctrine).

Ptomey complained of discrete employment actions in her 1999 EEOC complaint (*e.g.,* demotion, removal from office facility, and reassignment of subordinate staff). On October 29, 2001, she submitted a detailed chronology to the EEOC of conduct by Texas Tech she alleged was discriminatory and retaliatory. Yet, after receiving a right to sue letter from the EEOC concerning her 1999 complaint, she chose not to file suit. We find the employment actions Ptomey terms unlawful, occurring outside 180 days of her 2002 EEOC complaint, are untimely and not revived by the continuing violation doctrine. *See National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 2073, 153 L.Ed.2d 106 (2002) (rejecting appellate court's application of continuing violation doctrine to "serial violations" and holding untimely discrete actions are not made actionable even though related to timely alleged discrete actions); *Pergram v. Honeywell,* 361 F.3d 272, 279-80 (5th Cir. 2004) (denial of training and educational opportunities and client access were discrete employment actions not subject to continuing violations doctrine). They are not actionable in this proceeding.

Moreover, the events to which Ptomey points, beginning with those of July and August 1997, while demonstrating tension between Ptomey and others in the division, do

12

not raise an issue of fact that Texas Tech's explanation for the actions it took in April 2002 was a pretext for intentional age and sex discrimination. The trial court did not err in dismissing Ptomey's age and sex discrimination claims.

Retaliation

In her 2002 EEOC complaint, Ptomey alleged Texas Tech eliminated her position in retaliation for her 1999 complaint.

Under section 21.055, an employer commits an unlawful employment practice if it retaliates against an employee who: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. Tex. Lab. Code Ann. § 21.055 (Vernon 2006). The *McDonnell Douglas* burden-shifting standard applies also in claims of unlawful retaliation. *See Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996).

Ptomey's prima facie retaliation case requires proof that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See Webb,* 139 F.3d at 540. It is undisputed Ptomey engaged in a protected activity, filing an EEOC complaint against Texas Tech in 1999, and an adverse employment action occurred when Texas Tech eliminated her employment position and terminated her.

The parties disagree, however, whether evidence exists of a causal link between the protected activity and the adverse employment action. Texas Tech contends the summary

13

judgment evidence conclusively negates even a prima facie case of retaliation. The university first argues too much time elapsed between Ptomey's October 1999 complaint and the adverse employment action in April 2002 to support an inference of causation. It is correct that a plaintiff relying on temporal proximity to establish the causal link in her prima facie retaliation case must present evidence that the intervening period was "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Temporal proximity has been deemed a "helpful factor" in determining causation. *Eugen v. Rumsfeld,* 168 F.Supp.2d 655, 682 (S.D. Tex. 2001). But here, Ptomey does not rely on evidence of temporal proximity to establish the causal link in her prima facie case. Texas Tech cites no cases supporting defensive use of temporal proximity to negate conclusively the causal nexus in a plaintiff's prima facie case and we find no such authority. *But cf. Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir. 1995) (court in dicta noted passage of "several years" between protected activity and adverse action might be evidence against retaliation); *Anderson v. Limestone County,* No. 10-07-0174-CV, 2008 WL 2629664*13-14, 2008 Tex. App. Lexis 5041*37-38 (Tex.App.–Waco July 2, 2008, pet. filed) (mem. op.) (on review of summary judgment, court *inter alia* considered eighteen-month lapse between protected activity and adverse employment action in concluding plaintiff did not raise a fact issue on causation element of prima facie retaliation case). We cannot say here the lapse of time between the 1999 EEOC complaint and the 2002 adverse employment action, standing alone, conclusively negates the causation element of Ptomey's prima facie case.

Second, Texas Tech argues the summary judgment record conclusively establishes the absence of causation because Shonrock, who bore ultimate decision-making authority for Ptomey's position, was unaware of her 1999 EEOC complaint at the time of his decision to eliminate her position in 2002. We disagree.

In his affidavit, Shonrock avers he was unaware of Ptomey's 1999 EEOC complaint at the time of his final decision to eliminate her position, and he did not become aware of that complaint until he learned of her 2002 EEOC complaint. In her summary judgment affidavit Ptomey avers these statements of Shonrock are not true, and points to memoranda circulated among various Texas Tech administrators, including Shonrock, in early 2000 concerning her 1999 EEOC complaint. The summary judgment record contains memoranda dated January 24, January 31, and February 7, 2000, concerning Ptomey's 1999 complaint. The documents identify Shonrock as an addressee or recipient of a copy.

The burden of establishing a causal link in a plaintiff's prima facie case is much less onerous than the burden of proving causation required for the determination of the ultimate issue of retaliation. *Sherrod v. American Airlines,* 132 F.3d 1112, 1122 n.8 (5th Cir. 1998).[9] In *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674 (5th Cir. 2001), the Fifth Circuit reversed summary judgment for the employer on Medina's retaliation claim. En route to its decision, the court recited evidence that the supervisor who terminated Medina knew about his prior protected activity, and found that evidence sufficient to meet the causal link

---

[9] "The causal link required by the third prong of the prima facie case does not rise to the level of a 'but for' standard." *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir. Tex. 2002) (*citing Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002)).

15

element for purposes of Medina's prima facie case. *Id.* at 284.[10] Indulging every reasonable inference in favor of Ptomey, as non-movant for summary judgment, we find the memoranda raise a fact issue concerning Shonrock's knowledge in 2000 that Ptomey filed an EEOC complaint in 1999. Guided by *Medina*, we conclude the summary judgment record does not negate Ptomey's prima facie case of retaliation.

The burden of production, accordingly, shifted to Texas Tech to articulate a legitimate, non-retaliatory reason for its decision to eliminate the position of Director of College Development. *See Long,* 88 F.3d at 305. As we have noted, Ptomey's summary judgment evidence did not dispute that Texas Tech undertook a workforce reduction plan, eliminating a number of positions in the Student Services division Shonrock headed. A reduction in force is a legitimate, non-discriminatory reason for an employee's termination. *Russo,* 93 S.W.3d at 438; *see Nichols,* 81 F.3d at 41. As with her discrimination claim, we hold that Texas Tech's production of this legitimate, non-retaliatory reason eliminated the presumption of discrimination created by Ptomey's prima facie case. *Burdine,* 450 U.S. at 254; *Quantum Chem.,* 47 S.W.3d at 477.

Therefore, it was for Ptomey to present some evidence that the articulated reason for the complained of adverse employment action was false and the real reason for Texas Tech's action was retaliatory. *See St. Mary's,* 509 U.S. at 515, 113 S.Ct. at 2752. Although the presumption of discrimination disappears once the defendant meets its

---

[10] The court cited the Eleventh Circuit's holding that the causal link element in a prima facie case is met by evidence showing that the employment decision and the protected activity "were not wholly unrelated." 238 F.3d at 684, (*citing Simmons v. Camden County Bd. of Education,* 757 F.2d 1187, 1189 (11th Cir. 1985)).

16

burden of production, it is still proper to consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual." *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106 (*citing Burdine,* 450 U.S. at 255 n.10, 101 S.Ct. at 1095).

Unlike claims of discrimination brought under Labor Code § 21.125(a), the proper causation standard for retaliation claims under § 21.055 is the traditional "but for" measure.[11] The plaintiff must show the adverse action would not have been taken but for her protected activity. *Medina,* 238 F.3d at 685. Thus, we must determine whether the summary judgment proof is of such substance that on its consideration reasonable and fair-minded people could disagree whether Texas Tech would not have eliminated Ptomey's position but for her 1999 EEOC complaint. *See Garrett v. Great Western Distrib. Co.,* 129 S.W.3d 797, 799 (Tex.App.–Amarillo 2004, pet. denied).

Ptomey's proof of causation is a voluminous assortment of writings, some of which are communications between her and other Texas Tech officials. Many of the written

---

[11] *See Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 488-89 (5th Cir. 2004), (distinguishing *Quantum Chemical* in retaliation case based on Texas statute and explaining why traditional "but for" causation standard applies). This is the approach followed by other courts of appeals in retaliation cases since *Quantum Chemical. See Herbert v. City of Forest Hill,* 189 S.W.3d 369 (Tex.App.–Fort Worth 2006, no pet.); *Thomann v. Lakes Reg'l MHMR Ctr.,* 162 S.W.3d 788, 799-800 (Tex. App.–Dallas 2005, no pet.); *Tex. Dep't of Assistive & Rehabilitative Servs. v. Abraham,* No. 03-05-00003-CV, 2006 WL 191940*9, 2006 Tex. App. Lexis 721*26-27 (Tex.App.–Austin January 27, 2006, no pet.) (mem. op.); *AAA Office Coffee Serv. v. Hansen,* No. 01-03-00984-CV, 2005 WL 2470666*10 n.6, 2005 Tex. App. Lexis 8307 *30 n.6 (Tex.App.–Houston [1st Dist.] October 6, 2005, pet. den'd) (dicta) (mem. op.). *But see* State Bar of Texas, Texas Pattern Jury Charges–Business, Consumer, Insurance, and Employment, PJC 107.9 & cmt. (2006) (incorporating "motivating factor" causation standard in retaliation question but with cautionary note).

exchanges reflect disagreement and perhaps animosity. For example, in January and February 2002, Ptomey and other department officials exchanged several e-mails concerning her request to attend an out-of-town meeting of a professional association at the department's expense.[12] The request was denied. In a subsequent communication to Duggan, Ptomey accused him of holding a grudge for an unknown reason and included, without explanation, a reference to "the real truth of what happened in 1997." And a lengthy e-mail from Ptomey to a Texas Tech official, following notice of the elimination of her position, alleged retaliatory conduct that Ptomey there claimed occurred "immediately" following her 1999 EEOC complaint. Ptomey did not attempt to amend her EEOC complaint or file a related additional complaint nor, as noted, did she file suit after the EEOC issued a right to sue letter on October 31, 2001.

Having reviewed the entirety of the voluminous record, we find Ptomey's proof of unlawful retaliation for her 1999 complaint rises no higher than speculation, personal belief, and insupportable inferences. But to avoid summary judgment, the body of proof must be more than a mere scintilla. *See Greathouse v. Alvin Indep. Sch. Dist.,* 17 S.W.3d 419, 425 (Tex.App.–Houston [1st Dist.] 2000, no pet.) (summary judgment for defendant proper in discrimination case when plaintiff's evidence amounts to no more than conclusory allegations, improbable inferences, speculation, or subjective beliefs and feelings).

---

[12] The record reflects the organization was one in which Ptomey had long been active, and whose meetings she had previously attended, and reflects other department employees attended the meeting at school expense.

18

Conclusion

Having found the trial court did not err in granting summary judgment against Ptomey on each of her theories of recovery, we overrule her appellate issue and sustain the judgment of the trial court.


James T. Campbell
Justice