

# NUMBER 13-23-00405-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

EDCOUCH-ELSA
INDEPENDENT SCHOOL DISTRICT,                                    Appellant,

v.

DOMINGO RODRIGUEZ,                                              Appellee.

## ON APPEAL FROM THE 92ND DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron
Memorandum Opinion by Justice Cron**

Framed as one issue with two subparts, appellant Edcouch-Elsa Independent

School District (EEISD) appeals the denial of its plea to the jurisdiction in this age

discrimination suit brought by appellee Domingo Rodriguez.[1] Because EEISD provided a legitimate, nondiscriminatory reason for Domingo's termination and because Domingo failed to raise a genuine issue of material fact that EEISD's reason was pretextual, we reverse the trial court's denial of EEISD's plea to the jurisdiction and dismiss Domingo's claim for lack of subject-matter jurisdiction.

## I. BACKGROUND[2]

### A. Procedural History

Prior to his termination, Domingo was an assistant transportation director at EEISD. EEISD hired Dr. Gregory Rodriguez as its superintendent in September of 2020, who made some personnel changes at the school district to include terminating Domingo. Domingo was sixty-three years old at the time of his termination.

After Domingo was terminated, he filed a charge of discrimination, which he later amended, with the Texas Workforce Commission (TWC) alleging age discrimination. After he obtained a "Notice of Dismissal and Right to File Civil Action" from the TWC, he filed suit on July 5, 2022.

In his original petition, he alleged EEISD violated the Texas Commission on Human Rights Act (TCHRA or Chapter 21). In relevant part, Domingo alleged that EEISD terminated him and replaced him with two people ("Alberto" Barco and David Gallardo)

---

[1] Because there is more than one individual with the last name Rodriguez in this case, we refer to appellee by his given name.

[2] With the exception of Dr. Gregory Rodriguez's affidavit for reasons explained later in this memorandum opinion, the background is a summary of pertinent information derived from the parties' filings in the clerk's record. We further observe there is not a reporter's record in this case because Edcouch-Elsa Independent School District revoked its request for a reporter's record after this Court abated the appeal given the reporter's record was past due. Subsequently, the appeal was reinstated.

who were significantly younger and less qualified than him. And prior to his termination, his former supervisor, Martin Rodriguez, had evaluated him positively.

He alleged that EEISD gave conflicting reasons for his termination. His termination letter dated June 15, 2021, from Dr. Rodriguez simply stated that Domingo's separation was "[i]n the best interest of the district" (the "Termination Letter"). Yet, in a "Determination on Payment of Unemployment Benefits" letter dated July 19, 2021, from the TWC, it stated in relevant part, that "Our investigation found your employer laid you off because of a reduction in force[]" (the "TWC Letter"). And, in an investigative report, issued on October 1, 2021 ("Investigator's Report") by EEISD's attorney, Mr. Eden Ramirez, Ramirez did not mention a reduction in force as the reason for Domingo's termination. Instead, Ramirez concluded that Domingo was terminated because "the position had been closed due to declining student enrollment and changes to maximize resources at the Transportation Department."

Domingo also alleged that although he received his Termination Letter on June 15, 2021, Dr. Rodriguez informed him that his termination was not effective till June 17, 2021, and the school board did not meet until June 16, 2021. Additionally, according to Domingo, since the hiring of Dr. Rodriguez, EEISD has engaged in a "pattern and practice of age discrimination." He cited Dr. Rodriguez, in his "40s," replacing the former superintendent, who was in his "mid-70s"; "forc[ing] out" the former transportation director; and replacing five[3] other employees with younger employees. Lastly, he claimed, EEISD has no written

---

[3] We note the five employees listed are: Sylvia Garza, business manager-federal programs director, Pete Riojas, federal programs director, Tico Segura, warehouse management, Nelly Silva, superintendent secretary, and Mari Olivarez, principal.

proof that existed at the time he was terminated that would provide for a legitimate, nondiscriminatory reason to explain why he was terminated without any prior notice. He alleged that any of EEISD's reasons are false, pre-textual, and conclusionary.

On August 15, 2022, EEISD answered with a general denial and asserted governmental immunity. Approximately four months later, EEISD filed a plea to the jurisdiction supported by an affidavit from Dr. Rodriguez, along with nine other exhibits.[4] In its plea, EEISD contended that Domingo cannot establish a prima facie case because: (1) his position was eliminated, and his job duties were distributed among other employees; (2) neither Barco nor Gallardo are significantly younger than Domingo because Barco is five years younger than Domingo and Gallardo is four years younger; (3) Domingo has not alleged he was treated less favorably than any specific similarly-situated employee outside of the protected class; and (4) an alleged pattern and practice cannot form the basis of a prima facie case under the TCHRA. Alternatively, EEISD argued that Domingo cannot show that EEISD's legitimate, nondiscriminatory reason for eliminating his position was pretextual.

On April 28, 2023, EEISD filed a supplement to its plea to the jurisdiction in which it references deposition testimony taken from Dr. Rodriguez, Barco, and Gallardo, but the depositions were not attached.

---

[4] The nine exhibits are: (1) Domingo's charge of discrimination; (2) his first amended charge of discrimination; (3) an affidavit of Dr. Antonio Layton, Jr., the human resources director; (4) an unsigned written job description for the director of transportation; (5) an unsigned written job description for a bus mechanic; (6) an unsigned written job description for a bus driver; (7) an unsigned letter to Edelberto Barco notifying him that he is being "temporarily reassigned to *Interim Transportation Lead*"; (8)(a) an unsigned letter to David Gallardo notifying him that he is being "temporarily reassigned to *Interim Transportation Lead*", (8)(b) a letter from Dr. Rodriguez to David Gallardo, signed by both men, notifying David that he is being "temporarily reassigned to *Interim Transportation Lead*"; (8)(c) a letter from Dr. Rodriguez to David Gallardo, signed by Dr. Rodriguez, notifying David that he is being "temporarily reassigned to *Interim Transportation Lead*"; and (9) Domingo's original petition and request for disclosures.

On May 1, 2023, Domingo filed a response to EEISD's plea asserting there are various genuine issues of material fact.[5] He argued this is a "pretext case," and he would provide circumstantial evidence in support of his claim. Additionally, he argued that the fourth element of his prima facie case is satisfied because Barco, five years his junior, was his true replacement.

Domingo relied upon eleven exhibits in response to EEISD's plea, as well as "[a]ll exhibits attached to . . . [EEISD's] plea" and "[a]ll documents on file with the court in this matter." The eleven exhibits included parts of deposition testimony taken from (1) Barco, (2) Gallardo, and (3) Dr. Rodriguez, (4) the Investigator's Report, (5) the Termination Letter, (6) the TWC Letter, (7) an unsigned letter from Dr. Rodriguez to Barco dated September 30, 2021, stating, among other things, that Barco is "being temporarily reassigned to Interim Transportation Lead effective . . . September 16, 2021" and a signed letter from Dr. Rodriguez to Gallardo dated September 30, 2021 stating, among other things, that Gallardo is "being temporarily reassigned to Interim Transportation Lead effective . . . September 16, 2021", (8) a position statement from EEISD to TWC dated September 13, 2021 (the "Position Statement"), (9) unsigned EEISD job descriptions for a business mechanic and a bus driver; (10) EEISD's 2020–2021 school year clerical evaluation report of Domingo, and (11) EEISD's responses to Domingo's first request for admissions. Of note, request for admission number 12 states as follows:

---

[5] Within section four of Domingo's response, he appears to reference a different individual, Antonio Sanchez, as the non-movant.

REQUEST FOR ADMISSION NO. 12:
Admit or Deny Defendant provided information to the Texas Workforce Commission; Unemployment Division regarding Plaintiff's application for filing of unemployment benefits after his termination from Defendant, that Plaintiff was separated from his job due to a reduction in force.

ANSWER:    Admit.

On May 2, 2023, Domingo filed his first amended petition that included the same allegations apart from the following: Domingo no longer alleged Gallardo replaced him; without applying "Edelberto" Barco, five years his junior and less qualified than him, replaced him or he was treated differently than Barco; Barco was "inserted" as a supervisor by Dr. Rodriguez with the title "Lead Supervisor"; Barco was given a pay raise; Barco assumed the same or close to the same duties he previously had as Assistant Transportation Director; Barco was allowed to violate EEISD's policy by obtaining a medical certification for his vision test from a doctor not approved by EEISD; and Barco is making the "same salary" as Domingo was prior to his termination. And EEISD created a fictional reason for his termination of a reduction in force.

One day later, EEISD filed a reply to Domingo's response to its plea to the jurisdiction and attached the depositions of Dr. Rodriguez, Barco, and Gallardo. EEISD argued that Domingo failed to meet his burden to create a fact issue regarding the fourth element of a prima facie case of age discrimination. In it, EEISD argued that Domingo was not replaced, Barco was not significantly younger, and he and Barco are not similarly situated. Additionally, EEISD argued Domingo could not show its legitimate, non-discriminatory reason for terminating Domingo was pretext. That allegedly being,

[P]laintiff's position was eliminated and his employment was terminated. While the phrase "reduction in force" may not be used in each document alluded to by Plaintiff, the reasoning is the same throughout. The DIA Report that is attached to Plaintiff's Response as Plaintiff's Exhibit 4 notes that

6

Plaintiff's position was closed due to declining student enrollment and changes to the maximum resources available to the District. Moreover, the Position Statement that is attached to Plaintiff's Response as Plaintiff's Exhibit 8 noted that the District eliminated Plaintiff's position "due to changing operational needs" of the District. Clearly, the District's reasoning for terminating Plaintiff, that the position was closed due to the decline in available resources, never changed.

On May 4, 2023, Domingo filed a supplement to its response to EEISD's plea in which he included excerpts from Dr. Rodriguez's deposition testimony.

**B.      Dr. Rodriguez's Pertinent Deposition Testimony**

Dr. Rodriguez testified that EEISD employed him from September 10, 2020, to January 31, 2023. He explained that Domingo's termination was not based on performance. Instead, his position was eliminated. As for the reasons he decided to terminate Domingo, he stated, "As I told Mr. Rodriguez, it was in the best interest of the district." When asked to expound, he explained that, in his experience, a "district of approximately 4,000 students" with "declining enrollment" did not need two transportation directors. He also said the declining enrollment would create a "fiscal cliff" where financial resources would be needed. He summarized, "So in the best interest of the district, I also made reorganization of several positions in consolidation and elimination of those positions to save money for the school district." However, he agreed that he did not put this full explanation in writing to Domingo.

He admitted he made the decision to terminate Domingo before board approval, but provided the following explanation: "[B]ecause the school board has one employee, the superintendent, that they hire and fire. I'm the administrator for all employees in the district. So I make recommendations on termination and hiring, and the school board ratifies it." He agreed that the Termination Letter did not say "recommendation."

7

Additionally, Dr. Rodriguez testified that the Investigator's Report, Termination Letter, and Position Statement do not include the words "reduction in force" like the TWC Letter does. However, he also testified that while the Termination Letter does not reference "reduction in force" like the TWC Letter, "I don't think they're mutually exclusive. I think they can both be true." Additionally, he pointed out the Position Statement "uses a term that it was in the best interest of the district," and he "would say that reduction in force is in the best interest of the district." When questioned about whether EEISD maintained a reduction in force policy, he explained "there's a policy that has procedures for reduction in force for the school district" but clarified that he "was not making a reduction in force."

According to Dr. Rodriguez, there were no written job descriptions in existence when he joined EEISD so Abraham Gallegos, the director of human resources, was assigned to write them. Prior to Gallegos's voluntary departure, he was working on writing job descriptions for multiple positions so "if some positions didn't get completed, they didn't get completed." Dr. Rodriguez agreed that the interim lead supervisor position Barco assumed after Domingo was terminated did not have a written job description.

## C.    Order Denying Plea

On August 31, 2023, the trial court denied EEISD's plea by written order, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II.    STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea generally used to defeat a cause of action "without regard to whether the claims asserted have merit." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (quoting *Bland Indep. Sch. Dist. v. Blue*,

8

34 S.W.3d 547, 554 (Tex. 2000)). A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). In response to a plea, a plaintiff must allege "facts that would establish that the state agency violated . . . [Chapter 21] and, when challenged with contrary evidence, provide evidence that is at least sufficient to create a genuine fact issue material to that allegation." *Tex. Tech. Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (*Flores I*) (citation omitted). When, as here, jurisdictional facts are challenged, our standard of review mirrors that of a traditional summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018).

We indulge every reasonable inference and resolve any doubts in the plaintiff's favor. *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 709 S.W.3d 500, 505 (Tex. 2024) (*Flores II*). "However, 'we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not.'" *Id.* (quoting *Clark*, 544 S.W.3d at 771).

### III.   APPLICABLE LAW

#### A.    Immunity & Waiver

Governmental units, including school districts, are generally immune from suit, unless the state consents through a legislative waiver. *Clark*, 544 S.W.3d at 770. Governmental immunity from suit implicates a trial court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Id.*; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Chapter 21 of the Labor Code "waives immunity from suit only for statutory violations, which means the trial court lacks subject-matter jurisdiction over the dispute absent some evidence the school district

9

violated . . . [Chapter 21]." *Clark*, 544 S.W.3d at 763; *Garcia*, 372 S.W.3d at 637.

As relevant here, Chapter 21 prohibits age discrimination by employers and protects employees who are "40 years of age or older." *See* TEX. LAB. CODE ANN. §§ 21.001, 21.051, 21.055, 21.101; *Flores I*, 612 S.W.3d at 304–05. An "employer" includes a county, municipality, state agency, or state instrumentality, regardless of the number of individuals employed. TEX. LAB. CODE ANN. § 21.002(8)(D). An employer generally commits an unlawful employment practice "because of" an employee's age if the employee's age was "a motivating factor" for the practice, "even if other factors also motivated the practice." *Id.* § 21.125(a); *Flores I*, 612 S.W.3d at 305. "An employer commits an unlawful employment practice if because of . . . age the employer . . . discriminates in any . . . manner against an individual in connection with compensation or the terms, conditions, or privileges of employment." *See* TEX. LAB. CODE ANN. § 21.051(1).

We may look to analogous federal statutes and cases interpreting them to guide our reading of Chapter 21. *See Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021).

B.    **Evidentiary Framework**

A plaintiff may rely on either direct or circumstantial evidence to establish unlawful discrimination. *Flores I*, 612 S.W.3d at 305. A case based on circumstantial evidence is referred to as a "pretext" case. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 477 (Tex. 2001). In a pretext case, the plaintiff's ultimate goal is to show that the employer's stated reason for the adverse action was a pretext for discrimination. *See id. at* 476.

Domingo concedes his case is based on circumstantial evidence, and we thus follow the burden shifting framework the United States Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Flores II*, 709 S.W.3d at 505 ("Before a case is tried on the merits, and in the absence of direct evidence of discrimination, we use the *McDonnell Douglas* burden-shifting framework to evaluate whether a plaintiff has created a fact issue on her statutory claim." (citation omitted)). Under that burden-shifting framework:

> the plaintiff must create a presumption of illegal discrimination by establishing a prima facie case; (2) the defendant must then rebut that presumption by establishing a legitimate, nondiscriminatory reason for the employment action; and (3) the plaintiff must then overcome the rebuttal evidence by establishing that the defendant's stated reason is a mere pretext.

*Id.* (citing *Flores I*, 612 S.W.3d at 305). "[A]ll three steps of the framework, 'are relevant to the jurisdictional inquiry.'" *Id*. (quoting *Clark*, 544 S.W.3d at 783–84).

"Under this framework, the plaintiff is entitled to a presumption of discrimination if [the plaintiff] meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Garcia*, 372 S.W.3d at 634. Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case "is not onerous." *Id*. The burden of persuasion remains at all times with the employee in both direct-and-circumstantial evidence cases. *Tex. Health & Human Servs. Comm'n v. Kadia*, 704 S.W.3d 84, 100 (Tex. App.—Austin 2024, no pet) (citation omitted).

To establish a prima facie case of age discrimination, an employee must show that he: (1) was a member of the protected class (that is, 40 years of age or older), (2) was qualified for the position at issue, (3) suffered a final, adverse employment action, and

11

(4) was either (a) replaced by someone significantly younger or (b) otherwise treated less favorably than others who were similarly situated but outside the protected class. *Flores II*, 709 S.W.3d at 505 (citing *Flores I*, 612 S.W.3d at 305). "The mechanics of the prima facie case—and its significance in discrimination cases—are products of caselaw, specifically the burden-shifting framework created by the U.S. Supreme Court in *McDonnell Douglas* and consistently applied to TCHRA cases by this Court." *Garcia*, 372 S.W.3d at 638.

An employer's burden to provide a legitimate, non-discriminatory reason for termination is one of production, not persuasion. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

## IV.    ANALYSIS

EEISD first argues that Domingo failed to establish a prima facie case. Because we are reversing on other grounds, we will assume that Domingo established a prima facie case, *see Ptomey v. Tex. Tech. Univ.*, 277 S.W.3d 487, 493 (Tex. App.—Amarillo 2009, pet. denied); *see also City of Brownsville v. Gamez*, No. 13-23-00159-CV, 2024 WL 48185, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 4, 2024, no pet.) (mem. op.), and turn to whether EEISD provided a legitimate, nondiscriminatory reason for terminating Domingo.

### A.    Dr. Rodriguez's Affidavit

In its plea and on appeal, EEISD argues that it provided a legitimate, nondiscriminatory reason for Domingo's termination, which is supported by, among other evidence, Dr. Rodriguez's affidavit. Domingo argues that there is no evidence support's EEISD's plea because Dr. Rodriguez's affidavit is incompetent evidence given that its

12

concluding paragraph states, "[T]he information in my sworn statement above is a complete representation of the facts to the best of my knowledge." This attack, EEISD replies, ignores the other evidence in the record, such as Dr. Rodriguez's deposition testimony.

Even if Dr. Rodriguez's affidavit was rendered inadmissible by his concluding paragraph, s*ee Humphreys v. Caldwell*, 888 S.W.2d 469, 470–71 (Tex. 1994); *see also Flores v. Villarreal*, No. 13-20-00309-CV, 2020 WL 5050638, at *7 (Tex. App.—Corpus Christi–Edinburg Aug. 17, 2020, no pet.) (mem. op.) (citation omitted), it would not change the disposition of this appeal because Dr. Rodriguez also testified in his deposition about EEISD's legitimate, nondiscriminatory reason for Domingo's termination, and Domingo does not contend that such evidence was inadmissible. *See* TEX. R. APP. P. 44.1(a), 47.1; *Miranda*, 133 S.W.3d at 227 ("In a case in which the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists."); *see also City of Edinburg v. GNJ Realty Invs. LLC*, No. 13-17-00290-CV, 2018 WL 2731907, at *4 n.2 (Tex. App.—Corpus Christi–Edinburg, June 7, 2018, pet. denied) (mem. op.) (noting that in appellant's reply, it attached excerpts of deposition testimony that the deponent provided after its plea to the jurisdiction was filed).

That purported legitimate, nondiscriminatory reason given by Dr. Rodriguez in his deposition was that Domingo was terminated when his position was eliminated, along with making other personnel changes because of declining student enrollment that he knew would result in a "fiscal cliff" being reached, and Domingo's position not being needed at a school district the size of EEISD. Stated differently, EEISD, in a plain sense,

13

reduced its force, by one. *See Ptomey*, 277 S.W.3d at 496 ("A reduction in force is a legitimate, non-discriminatory reason for an employee's termination."); *see also Gamez*, 2024 WL 48185, at *5 (explaining that appellant's evidence that accompanied its plea to the jurisdiction included a letter notifying the appellee that his position was being eliminated due to budgetary constraints, affidavits from two City employees who averred the position was not budgeted for and responsibilities were transferred to another person as well as appellee's own deposition acknowledging the position had been eliminated was sufficient to show that appellee's position was eliminated, as part of a reduction in force); *see generally Hall v. RDSL Enters. LLC*, 426 S.W.3d 294, 303 (Tex. App.—Fort Worth 2014, pet. denied).

We recognize that Dr. Rodriguez testified he did not terminate Domingo based on a reduction in force, but his testimony in this regard was made in the context of discussing EEISD's reduction-in-force policy, and Domingo has not argued that EEISD violated such a policy. *See Flores II*, 709 S.W.3d at 505 (Tex. 2024) ("However, we cannot disregard evidence necessary to show context[.]") (internal citations omitted). Thus, EEISD has shown a legitimate, nondiscriminatory reason for termination.

## B.    No Fact Issue on Pretext

To raise a fact issue on the pretext element of a discrimination claim, the employee must present evidence providing the reasons stated by the employer were not its true reasons, but were a pretext for discrimination, or the reasons were not credible. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *see also San Benito Consol. Indep. Sch. Dist. v. Cruz*, No. 13-20-00310-CV, 2021 WL 921793, at *8 (Tex. App.—Corpus Christi–Edinburg Mar. 11, 2021, no pet.) (mem. op.) ("A reasonable

14

inference that discrimination was a motivating factor may be made if the plaintiff provides evidence that the reasons given were false or unworthy of credence." (citation omitted)).

To the extent Domingo argued in his response and supplemental response that a question of fact exists on whether EEISD's reasons were pretextual because: (1) there is a purported inconsistency in EEISD's explanation, (2) EEISD failed to follow its policies or procedures, and (3) there is a discriminatory "pattern and practice" at EEISD, we address EEISD's challenge to each in turn.

### 1. No Inconsistency

Pretext can be established by undermining the credibility of the employer's explanation by presenting weaknesses, implausibilities, inconsistencies, or contradictions. *See Tex. Health & Human Servs. v. Sepulveda*, 668 S.W.3d 856, 868 (Tex. App.—El Paso 2023, no pet.) (citation omitted) ("[P]roviding inconsistent and shifting explanations for an adverse employment decision can give rise to an inference of pretext."); *see also Univ. of Tex. Sw. Med. Ctr. v. Vitetta*, No. 05-19-00105-CV, 2020 WL 5757393, at *21 (Tex. App.—Dallas Sept. 28, 2020, no pet.) (mem. op.) ("Doubt in the employer's asserted reason can be established in a number of ways, including by proof that the employer provided shifting or different reasons for its action at different times." (citation omitted)).

As Dr. Rodriguez conceded in his deposition, EEISD did not use the exact words "reduction in force" in the Termination Letter, the Investigator's Report, or the Position Statement, as was used in the TWC Letter. However, the purported inconsistency fails to support an inference of discrimination because these four documents do not contradict each other. Instead, they say the same thing albeit phrased differently.

15

To explain, the "best interest of the district" reason provided in the Termination Letter is undeniably broad, and thus, the Investigator's Report and Position Statement (both following the Termination Letter in time) simply provided more detail as to what "best interest of the district" meant in response to discrimination allegations. *See generally Flores II*, 709 S.W.3d at 505 (explaining that we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not). That detail being, Domingo's position was closed (or eliminated) based on the operational needs of the school district, which, again, is another way of saying that EEISD reduced its workforce in a plain sense. *See generally Ptomey*, 277 S.W.3d at 493, 496; *see also Gamez*, 2024 WL 48185, at *5. Without detail, the TWC Letter characterized Domingo's termination the same, as a "reduction in force." In sum, although these documents use different words, they do not expose an inconsistency. *See Flores II*, 709 S.W.3d at 505; *see also Tex. Dep't of Agric. v. Latting*, No. 03-17-00603-CV, 2018 WL 1404501, at *4 (Tex. App.—Austin Mar. 21, 2018, no pet.) (mem. op.) (declining to find a fact issue where employee disputed that there was a reduction in force as noted in the subject line of her termination letter where the body of the letter indicated her position was eliminated due to a reorganization).

Concluding they are the same also provides context to EEISD's response to requests for admission number 12 (noted above), in which EEISD admits that it provided information to TWC that Domingo was "separated from his job due to a reduction in force," because it did. And Domingo has not set forth evidence sufficient to raise a fact issue otherwise. *Cf. Orion Mktg. Grp., Inc. v. Morris*, No. 04-07-00151-CV, 2008 WL 441759, at *4 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op.) ("In the 'Work

16

Separation Details' form to the Texas Workforce Commission, [the employer's human resources director] wrote that [the employee] missed three days without obtaining permission from his supervisor and she had previously warned [the employee] that he needed to work his scheduled hours. Yet, other evidence suggested that the warnings [the human resources director] gave to [the employee] were that if he failed to work at least 35 hours a week he would not be able to maintain his health insurance benefits."). As such, the trial court erroneously determined that Domingo raised a fact issue on pretext in this manner.

### 2. No Failure to Follow Policies

An employer's failure to follow its own policies and practices when taking an adverse employment action can create an inference of pretext. *See Sepulveda*, 668 S.W.3d at 868 (citation omitted); *see also Johnson v. Capstone Logistics, LLC*, No. 01-23-00221-CV, 2024 WL 5249164, at *8 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, no pet.) (mem. op.) ("But the ultimate question here is whether [the employer's] failure to follow its internal policies supports an inference that discrimination was a motivating factor in [the employee's] termination." (citations omitted)). Although Dr. Rodriguez testified that he did not have the school's board written approval to eliminate Domingo's position before he gave Domingo the Termination Letter, he also provided unrebutted testimony of an unwritten practice in which he "makes recommendations on termination and hiring, and the school board ratifies it." In other words, the evidence presented is that he was following an unwritten practice, not failing to do so.

Additionally, although Dr. Rodriguez conceded that the interim transportation lead position did not have a written job description, Dr. Rodriguez nonetheless provided

17

unrebutted testimony that Gallagos was working on writing job descriptions before his departure but "if some positions didn't get completed, they didn't get completed." As can be seen, this unrebutted testimony falls short of showing the existence of an internal policy or practice. As such, the trial court also erroneously determined that Domingo raised a fact issue on pretext in this manner.

### 3. No Pattern or Practice

Assuming without deciding that Domingo may demonstrate prextext by presenting evidence that EEISD engaged in a "pattern and practice of age discrimination," we hold the original and amended charge of discrimination is insufficient to raise a fact issue because the "pattern and practice" allegations are conclusory, unsubstituted opinions. *See* TEX. R. EVID. 401; *see also Dall. Cnty. Hosp. Dist. v. Ballew*, No. 05-22-01358-CV, 2024 WL 1269075, at *10 (Tex. App.—Dallas Mar. 26, 2024, no pet.) (mem. op.) ("To the extent [appellant] relies on . . . [his own conclusory statements from his declarations] . . . of pattern or practice to show pretext, we conclude it does not raise a fact issue as to pretext. [Appellant] submitted no evidence to support his allegations. Rather, they are simply his unsubstantiated opinions. Such testimony is insufficient to raise a fact question as to pretext."). As such, the trial court again erroneously determined that Domingo raised a fact issue on pretext in this manner.

Having found the evidence does not raise a fact issue on pretext, Domingo failed to meet his burden to show pretext. Accordingly, we sustain EEISD's sole issue.

18

## V.     Conclusion

We reverse the trial court's order denying EEISD's plea to the jurisdiction and dismiss Domingo's claims for lack of subject-matter jurisdiction.

JENNY CRON
Justice

Delivered and filed on the
11th day of December, 2025.